THE CITY OF CHICAGO *et al.*

*v.*

JOSEPH HANREDDY.

*Opinion filed June 23, 1904—Rehearing denied October 11, 1904.*

1. MUNICIPAL CORPORATIONS—*section 50 of article 9 of the City and Village act construed.* Section 50 of article 9 of the City and Village act, requiring contracts for public improvements costing over $500 to be let to the lowest responsible bidder after advertising for bids, applies to all public improvements, however paid for, and also to unfinished work abandoned by the contractor the cost of completing which will exceed $500.

2. SAME—*section 50 of article 9 of City and Village act was not repealed by act of 1897.* Section 50 of article 9 of the City and Village act, since it applies to all public improvements, whether constructed by special assessment or otherwise, was not repealed, by implication, by the act of 1897, relating solely to local improvements.

3. SAME—*when contract may be let without advertising for bids.* Under the proviso to section 50 of article 9 of the City and Village act, upon a two-thirds vote of the aldermen the proper officer of a city or village may enter into contract for a public improvement without advertising for bids and without the approval of the mayor or president of the board of trustees.

4. SAME—*city cannot determine to complete public work by day labor.* A city has no discretion, under section 50 of article 9 of the City and Village act, to complete by day labor unfinished public work abandoned by the contractor, the cost of completing which will exceed $500.

*City of Chicago* v. *Hanreddy,* 102 Ill. App. 1, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. RUSSELL P. GOODWIN, Judge, presiding.

This was a bill in chancery filed in the superior court of Cook county by the appellee, a resident and tax-payer of the city of Chicago, against the city of Chicago, its mayor and certain other officers of said city, to enjoin said city from constructing by day labor a portion of section D of the Lawrence avenue main conduit for intercepting sewers. The city and its officers, who were made defendants to said bill, filed an answer thereto, and upon a hearing upon bill and answer a decree was entered granting an injunction restraining the city of Chicago and its officers from constructing said work otherwise than by a contract or contracts let, after advertising and receiving bids therefor, to the lowest responsible bidder or bidders. An appeal was prosecuted from said decree by the appellants to the Appellate Court for the First District, where the same was affirmed, and a further appeal has been prosecuted to this court.

It appears from the bill and answer that the city council of the city of Chicago, prior to May 2, 1898, passed an ordinance for the construction in said city of section D of the Lawrence avenue main conduit for intercepting sewers; that on said second day of May a contract was entered into between the city of Chicago and John W. Farley and John Green, doing business under the name of Farley & Green, for the construction of said work. The contract provided that the work should be commenced on or before May 3, 1898, and should progress thereafter uninterruptedly, unless otherwise ordered by the commissioner of public works, and should be completed on or before September 1, 1899. The time of the commencement, rate of progress and time of completion of the improvement were made essential conditions of

the contract. The contract provided that everything pertaining to the work should be in every particular satisfactory to the commissioner of public works, and that the work should be done in accordance with certain plans and specifications which were made a part of the contract. It was provided, among other things, by the contract that the work should be prosecuted with such force as the commissioner of public works should deem adequate to its completion within the time specified, and if at any time the contractors should refuse or neglect to prosecute the work with a force sufficient, in the opinion of the said commissioner, for its completion within a specified time, or if, in any event, the contractor should fail to proceed with the work in accordance with the requirements and conditions of the contract, the city, by its commissioner of public works, should have the right and authority to take the work out of the contractor's hands and to employ other workmen to complete the unfinished work, and to deduct the expenses thereof from any money that might be due the contractors on account of the work or to re-let the same to other parties. Farley & Green entered into bond in the sum of $239,000 with the American Surety Company of New York as surety, conditioned for the faithful performance by Farley & Green of their contract with the city for the construction of the improvement. The conduit was to be 12,817 feet in length, 3905 feet of which in Lawrence avenue, and extending from Lake Michigan to Beacon street, was to be what is known as an "open cut," and the remainder was to be tunnel work. Farley & Green proceeded with the work until they had completed the 3905 feet of open cut and 694 feet of the tunnel, making in all 4599 feet, and then abandoned the work and refused to perform their contract, leaving 8218 feet of the tunnel work uncompleted.

October 21, 1901, the city council passed an order, whereby, after reciting the default of Farley & Green,

the commissioner of public works was directed to advertise for bids for the completion of the work provided for by the Farley & Green contract. The commissioner of public works advertised for bids as directed by the order, and in response to the advertisement received the following bids: Griffiths & McDermott, $81.25 per foot; Joseph Hanreddy, $68 per foot; FitzSimons & Connell, $75 per foot; Nash Bros., $71.90 per foot. November 8, 1901, the commissioner of public works sent a written communication to the city council, stating that he had advertised for bids in accordance with the order of October 21, 1901, and transmitted the bids received by him to the city council. He also stated in said communication that the estimates made by the department of public works on said work was $66 per foot actual cost, not taking into consideration any unforeseen delays that might occur in the completion of the work, and that, taking everything into consideration, the department estimated the work could be done for $70 per foot, and stated if said work was done by day labor it would progress rapidly, and all chances of extras, on account of unforeseen delays or other conditions, would be eliminated, and suggested, before the city council recommended any award of a contract for the completion of the work, that the policy of doing said work by day labor be thoroughly investigated. After the receipt of said communication from the commissioner of public works, the city council, on December 16, 1901, passed an ordinance, the material parts of which are as follows:

"*Be it ordained by the city council of the city of Chicago:*

"Sec. 1. That the commissioner of public works be and he is hereby authorized and directed to complete the work required by the contract between Farley & Green and the city of Chicago, dated May 2, 1898, for the construction of section D, open cut and tunnel, Lawrence avenue, of main conduits for intercepting sewers, directly, and not by contract, and in the employment of

labor thereon to employ exclusively laborers and artisans whom the city shall pay by the day. All material of the value of $500 and upward, used in the construction of said work, shall be purchased by first advertising and then letting contracts therefor to the lowest responsible bidder, in the method provided by law. Every laborer and artisan employed under this section shall be certified by the civil service commission to the commissioner of public works, in accordance with the requirements of an act of the legislature of the State of Illinois entitled 'An act to regulate the civil service of cities,' in force March 20, 1895, and the rules of the civil service commission of the city of Chicago. On or before the fifteenth day of each and every month after the construction of said work has begun, the commissioner of public works shall submit a detailed report to the city council, showing the cost of the labor thereon and the amount of and cost of work accomplished during the preceding month.

"Sec. 2. The commissioner of public works is hereby authorized and directed to reject all bids for the completion of section D, open cut and tunnel, Lawrence avenue, of main conduits for intercepting sewers, received pursuant to advertisement published under authority of an ordinance passed October 21, 1901, authorizing and directing the commissioner of public works to advertise for bids for said work and transmit the same to the city council; and all such bids are hereby rejected, and said ordinance of October 21, 1901, is hereby rejected.

"Sec. 3. This ordinance shall take effect and be in force from and after its passage."

The bill avers that the city and the commissioner of public works intend to construct said uncompleted work as directed by the ordinance of December 16, 1901; that payment for the same is to be made from the water fund, and that the improvement involves an expenditure in excess of $500,000, $200,000 of which will be expended for work and labor, exclusive of material, and charges that

the ordinance authorizing such work to be done by day labor, and not by contract let to the lowest responsible bidder after advertising for bids, is void, and prays for an injunction, etc.

CHARLES M. WALKER, Corporation Counsel, THOMAS J. SUTHERLAND, and ROSWELL B. MASON, for appellants:

Even if section 50 of article 9 of chapter 24 of the Revised Statutes of Illinois applied to all public works and was in force at the time of the making of the original contract, the city yet had the authority to complete the unfinished work provided to be done by the contract, by day labor and without letting the work out to new contractors.   1 Starr & Cur. Stat. p. 777; *McChesney* v. *Syracuse*, 22 N.Y. Supp. 507; *In the Matter of Leeds*, 53 N.Y. 400; *Bass Foundry* v. *Commissioners*, 115 Ind. 234; *Commissioners* v. *Iron Co.* 123 id. 364; Tiedeman on Mun. Corp. 311.

In any event, section 50 of article 9 of the City and Village act applies only to local improvements.   The Lawrence avenue intercepting sewer is not a local but a general public improvement, and the provisions of section 50 cannot, therefore, apply to it.   *Chicago* v. *Blair*, 149 Ill. 310; *Hewes* v. *Glos*, 170 id. 436; *Morgan Park* v. *Wiswall*, 155 id. 262; 1 Starr & Cur. Stat. chap. 24, art. 9, secs. 1, 2, 4, 50, 54; Const. 1870, art. 9, sec. 9; *People* v. *Pierce*, 90 Ill. 85; *Falch* v. *People*, 99 id. 137; *Guild* v. *Chicago*, 82 id. 472; *Cruse* v. *Aden*, 127 id. 231; *Castner* v. *Walrod*, 83 id. 171; Hurd's Stat. 1901, pp. 376, 400; *Culver* v. *Bank*, 64 Ill. 528; *Devine* v. *Commissioners*, 84 id. 590; *People* v. *Nelson*, 156 id. 364; *Canal Comrs.* v. *East Peoria*, 179 id. 214; *Hogan* v. *Akin*, 181 id. 448; *People* v. *Thornton*, 186 id. 162.

Section 50 of article 9 of the City and Village act, even if in force, does not apply to improvements the cost of which is payable from the water fund.   *Wagner* v. *Rock Island*, 146 Ill. 139; Hurd's Stat. 1901, chap. 24, art. 10, secs. 1, 3; *Western Savings Fund Society* v. *Philadelphia*, 31 Pa. St. 175; *Bailey* v. *Mayor*, 3 Hill, 538; *Joliet* v. *Alexander*,

194 Ill. 457; 1 Dillon on Mun. Corp. (4th ed.) par. 66, p. 108; *Bank* v. *Arkansas City*, 76 Fed. Rep. 271.

JOSEPH B. DAVID, for appellee:

A tax-payer has the right to enjoin a municipality from letting a contract involving the expenditure of public money, even though such tax-payer was a bidder for the work provided for by such contract. *Adams* v. *Brenan*, 177 Ill. 194; *Holden* v. *Alton*, 179 id. 318; *Frame* v. *Felix*, 167 Pa. St. 47; 2 Dillon on Mun. Corp. (4th ed.) 1110.

A municipal corporation can exercise only such power as is conferred by legislative enactment. 1 Dillon on Mun. Corp. (4th ed.) sec. 89, p. 145; *Cook County* v. *McCrea*, 93 Ill. 236.

The mode provided by the legislature, and no other, must be followed by a municipal corporation. *Holden* v. *Alton*, 179 Ill. 318; *Frame* v. *Felix*, 167 Pa. St. 47; *Nicholson Pavement Co.* v. *Painter*, 35 Cal. 699.

An ordinance of a municipality which prevents any class of persons from bidding upon or receiving the contract for the doing of any public work involving the expenditure of public money is null and void. *Holden* v. *Alton*, 179 Ill. 318; *Adams* v. *Brenan*, 177 id. 194.

Mr. JUSTICE HAND delivered the opinion of the court:

The city of Chicago is incorporated under "An act to provide for the incorporation of cities and villages," approved April 10, 1872, and the position of appellee is, that the city, by virtue of section 50 of article 9 of said act, which reads as follows: "All contracts for the making of any public improvement, to be paid for in whole or in part by a special assessment, and any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder, in the manner to be prescribed by ordinance,—such contract to be approved by the mayor or president of the board of trustees: *Provided, however,* any such contract

may be entered into by the proper officer without advertising for bids, and without such approval, by a vote of two-thirds of all the aldermen or trustees elected,"—is prohibited from completing said work except by contract let, after advertising for bids, to the lowest responsible bidder.

It is first contended by the appellants that said section 50 does not apply to contracts for public improvements unless said improvements are to be paid for, in whole or in part, by special assessment. The section of the statute above quoted not only provides that all contracts for the making of any public improvement to be paid for, in whole or in part, by a special assessment, where the expense thereof shall exceed $500, shall be let to the lowest responsible bidder after advertising for bids, but it also provides that "any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder" after advertising for bids, clearly showing that the legislature had in mind a public work or improvement which might be paid for by a fund derived from a source other than that of a special assessment, as well as an improvement which was to be paid for by a special assessment. The language used is so clear and specific as not to admit of construction. The fact that section 50 is found in article 9 of the City and Village act, which article is given the sub-title "Special assessment for local improvements," is unimportant. The provision is general, and the language, "any work or other public improvement," must be held to include all work or other public improvement, whether the same is to be paid for from funds raised by special assessment, general taxation or other public funds, as in this case from the water fund.

It is next contended, that even though it be conceded that if a contract for a public improvement be let by the city it must be to the lowest responsible bidder after advertising for bids, still, it is said, the city had a discre-

tion whether it would complete the work by contract or do the work by day labor, and if it determined to do the work by day labor no public letting was necessary. The language of the section is, "any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder." No discretion is thereby conferred upon the city or any of its officers as to whether the work or improvement shall be constructed under contract or by day labor, but it is clear if the work or other public improvement will exceed in cost the sum of $500 it must be let to the lowest responsible bidder after advertising for bids.

It is further contended that said section 50 should not be held to apply to unfinished work, where a valid contract had been let and the contractor had abandoned the work. We find no authority for reading into said section an exception to the effect that where a valid contract has been let after advertising for bids, and the contractor has abandoned the work, the city may complete the work by day labor, where the cost of the unfinished work will exceed the sum of $500. The authorities relied upon by the appellants to sustain their position we are of the opinion are not in point. They are cases where the improvement had been completed and accepted by the municipality and an action had been brought against the city for the value thereof, or they arose under statutory provisions which were different from the provisions of the statute in force in this State. To hold that the statute does not apply to an unfinished public improvement after the work has been abandoned by the contractor would be to permit contracts for public improvements to be let to irresponsible parties, which, when abandoned after some portion of the work had been done, would open wide the door to fraud and destroy competition, and enable city officials to do indirectly what in express terms they are prohibited from doing by the statute. The object of the statute is to require the municipalities of

this State to advertise for bids upon any work or other public improvement which they propose to construct, and to let the same to the lowest responsible bidder. The statute is in general terms and applies to all public improvements where the costs exceed $500, and the fact that a contract for the improvement had once been let and the work abandoned before completion, if the cost of completing the same will exceed the sum of $500, does not authorize the municipality to complete the improvement by day labor, but a contract for its completion must be let to the lowest responsible bidder after an advertisement for bids. To hold otherwise would be to nullify the statute.

It is further contended that section 50 is repealed by "An act concerning local improvements," approved June 14, 1897. In disposing of this question the Appellate Court used the following language, with which we agree: "The act of 1897 is not a revision of the whole subject of the act of 1872, nor is it intended as a substitute for that act; neither is it a revision of the whole subject of article 9 of the act of 1872. The act of 1897, as admitted by appellants' counsel, relates exclusively to local improvements, or such as enhance the value of property adjacent to them, while the language of section 50, article 9, of the act of 1872, 'any work or other public improvement,' includes work and improvements not merely local, but such that the benefits thereof are diffused throughout the municipality. Repeals by implication are not favored, and it cannot reasonably be said that a statute relating exclusively to local improvements can, by implication, repeal a provision in a former statute including work and improvements not local."

It is also urged that to give said section 50 the construction contended for by appellee would be to so far embarrass the municipalities of this State in making public improvements, when such municipalities are indebted above the five per cent constitutional limit, as to

211-3

render said section 50 unconstitutional and void. Said section provides that a contract for any work or other public improvement, upon a two-thirds vote of all the aldermen or trustees, may be entered into by the proper officer of a city or village without advertising for bids and without the approval of the mayor or president of the board of trustees. This proviso was doubtless passed to enable cities and villages to make contracts for public improvements without advertising for bids and without the approval of the mayor or president of the board of trustees in cases of emergency, and the powers therein contained are broad enough to authorize them to pay for the improvement as the work progresses, which fact entirely removes the objection urged by the appellants to the constitutionality of said section 50. The fact that the emergency might not be of so serious a character as to induce the requisite number of aldermen or trustees to vote to authorize a contract to be made for a public improvement without advertising for bids or without the approval of the mayor or president of the board of trustees, and to pay for the improvement as the work progressed, would be no sufficient reason to authorize the courts to hold that such municipalities had the power to make contracts not only not authorized by the statute, but by the express provisions of the statute prohibited.

From an examination of the questions here presented for determination the conclusion has been reached that the ordinance of December 16, 1901, authorizing the work of completing said improvement to be done by day labor, was passed by the city council without authority of law and that said ordinance is void, and that the injunction restraining the city and its officers from proceeding to complete the work under the terms of said void ordinance was properly granted by the superior court.

The judgment of the Appellate Court will therefore be affirmed.                        *Judgment affirmed.*