## City of Centralia, Illinois, Appellant, v. D. W. Norton & Co., et al., Appellees.

1. CHANCERY—*character of bill of interpleader.* A bill of interpleader presupposes that the stakeholder has in his possession a certain definite fund concerning the ownership of which there is controversy among the several defendants. A bill which seeks to ascertain the amount due to several parties, as between whom there is no controversy, is not a bill of interpleader in the technical sense.

2. LOCAL IMPROVEMENTS—*when must be let by contract.* The statute which requires all local improvements the expense of which shall exceed $500 to be let to the lowest responsible bidder is mandatory, and a city is not justified in assuming and itself doing the work by virtue of the arising of a sudden emergency.

3. MECHANICS' LIENS—*what not valid set-off against claim.* A city cannot set off against the claim of sub-contractors the amount of a loss suffered by reason of the abandonment of the work by the contractor, where it has compromised the liability upon the bond given by such contractor for a less sum than the penalty thereof; nor can such city charge against such sub-contractors an amount expended by it in completing the improvements where it has failed to comply with the law with respect to the re-letting of the work to the completion thereof.

Bill of interpleader. Appeal from the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

WILLIAM G. MURPHY and J. J. BUNDY, for appellant.

W. F. BUNDY and FRANK F. NOLEMAN, for appellees; HOWARD GARRISON, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a bill of interpleader filed in the Circuit Court of Marion county by the city of Centralia against D. W. Norton & Co., a contracting company, and certain other persons, creditors of said Norton &

Company, who claimed to have furnished labor and material to said Norton & Company in the construction of an outlet sewer for said city of Centralia, in the year 1904. There seems to be practically no controversy as to the facts in the case which are substantially as follows:

On October 12, 1904, appellees, D. W. Norton & Company, as the lowest bidders for the work, entered into a contract with appellant for the construction of an outlet sewer system for the city. The contractors entered upon their work and continued in the construction of the sewer system until the 22nd day of February following, when they abandoned the contract, leaving it only partially completed and soon afterwards went in bankruptcy. The city thereupon undertook the work and completed it by day labor without calling for bids and letting it to the lowest bidder, appropriating for this work all the material which had been furnished Norton & Company and remaining unused. The contract price to be paid to Norton & Company for the completed work was $16,649.20 of which amount $10,966.66 was paid to them before the work was abandoned, leaving $5,682.54 still unpaid. In completing the work appellant extended the sum of $2,831.35. Norton & Company had given a bond to appellant in the sum of $8,000 for the performance of its contract with the National Surety Company as surety. Before proceeding with the work of completing the sewer system, appellant settled or compromised with the Surety Company for its liability on the bond covering the contract in this case and also in what is known as the service sewer case, for the sum of $3,000 and of this amount they credited Norton & Company with $1,000 on the contract involved here, known as the outlet sewer contract. After deducting the amount received from the Surety Company from the total amount expended by appellant in completing the work there remained the sum of $1,831.35 which appellant paid out of its general fund. The defend-

ants in the court below were the contractors and a number of firms and individuals who had furnished material or labor or both to the contractors. Twelve of these firms and individuals, having aggregate claims amounting to $4,770.66, are represented as appellees here. These creditors of the contractors served notice of lien on the city, of their respective claims under the mechanics' lien law prior to the settlement of the city with the Surety Company, but after the city had paid Norton & Company the $10,966.66 above referred to. The contractors were not to be paid by the city in money but in special improvement bonds issued by the city for that purpose and in its bill of interpleader the city offers to deliver said creditors of the contractors an amount of said bonds equal to the balance unpaid on the original contract, less the sum of $1,831.35, taken by the city from the general fund in its treasury to complete the contract, that is the sum of $3,851.19, which was less than the amount claimed by said appellees to be due them by $919.47. Appellees filed their several answers to the bill of interpleader alleging among other things that appellant had no right to cancel the bond given by the National Surety Company for a less sum than was necessary to complete the contract; that it had no authority to go ahead and complete the contract, but should have let it to the lowest bidder and either compelled the National Surety Company to complete it or to stand the entire cost of the work of completion; that appellant unlawfully expended said sum of $1,831.35 and should be compelled to bring the whole of said sum of $5,682.54 in bonds into court. A decree was entered by the court in favor of appellees and finding that there was in the hands of the mayor of the city of Centralia improvement bonds of said outlet sewer system, subject to the lien of said appellees, of the value of $5,682.54, and that said city was not entitled to any liens or deductions against the same and it was ordered and decreed that the city by its mayor turn

over said bonds to the master in chancery of said court; that said master after obtaining possession of said bonds proceed to advertise and sell the same, or so much thereof as might be necessary to pay the costs of this suit and the claims of appellees.

Appellant here insists that the court erred in entering a decree against it for any amount above that which it offered to bring into court, that is the sum of $3,851.19, claiming that Norton & Co. could only have been entitled to what was left of the contract price after deducting the amount paid to them, and the additional amount necessarily paid for the completion of the contract after they had abandoned it; that appellees had no greater rights than Norton & Co.; that the bond of the National Surety Company was not given for the benefit of subcontractors or lien claimants but solely for the protection and benefit of the city of Centralia, which had a perfect right to deal with it as it saw fit and make such settlements as it thought best.

The bill in this case is called a bill of interpleader and is in the usual form of such bills. It states that the complainant is not colluding with any of said defendants, touching the matters in controversy and has not exhibited the bill at the request of any of them, but merely of its own free will to avoid being molested and harassed touching said matters. It states that the complainant is willing to deliver said bonds of the city to the amount of $3,851.19 to such person or persons as shall be lawfully entitled to recover the same, and offers to bring the same into court if so directed; and asks that the defendants may be required to interplead and settle and adjust their said claims among themselves and that complainant may be permitted to bring into court the special assessment bonds of the city to the amount above named, for the benefit of such defendants as shall appear to the court to be entitled thereto.

A bill of interpleader presupposes that the stake-

holder or fundholder has in his possession a certain definite amount in money or funds, concerning the ownership of or right to which, there is a controversy among other persons; that he, the fundholder, is impartial as between the parties and desires to dispose of the fund without trouble or expense to himself and that he therefore files his bill offering to bring the fund into court, and asking that the parties who are claiming the same as against each other, be required to litigate their claims at their own expense, and relieve him from further care or trouble in reference to the matter. That however is not the case presented here. In this case there is no conflict or dispute whatever between the subcontractors who are the claimants of the fund, as to the amount due them respectively. The only contention whatever is between appellant on the one side and appellees on the other as to the amount appellant should be required to pay in bonds. When the amount of appellant's liability shall have been determined, the controversy is disposed of and distribution can be made according to the admitted and uncontroverted claims of the respective appellees. As however no question is raised here by either party as to the right of the court to determine the question arising between appellant and appellees, we are not disposed to question that right here. The bill, however, must be treated as one filed by appellant against appellees to determine the amount of its own liability and for its own relief and such being the case the right of appellant to obtain relief must be construed by the rules of equity.

Section 23 of the Mechanics' Lien Law of 1903 (Revised Statutes, Hurd, 1905, par. 37), provides that "any person who shall furnish material, appartus, fixtures, machinery or labor to any contractor, for a public improvement in this state, shall have a lien on the money, bonds or warrants due or to become due such contractor for such improvement," and it further provides for giving the proper officials a notice of

claim, which requirement was complied with by appellees in this case.

Section 74 of the statute in relation to local improvements, under which the work in question was being done (Revised Stat., Hurd, 1905, chap. 24, par. 580) provides that, ''All contracts for the making of any public improvement to be paid wholly or in part by special assessment or special tax and any work or other public improvements, when the expense thereof shall exceed five hundred dollars ($500), shall be let to the lowest responsible bidder in the manner herein prescribed, such contracts to be approved by the president of the Board of Local Improvements.''

In this case the work done by the city in completing the contract was both to be paid for by special assessment and exceeded in amount $500, so that the law required the contract should be let to the lowest responsible bidder. This however was not done by the city but it proceeded to do the work itself, employing labor by the day.

It is claimed by appellant that an emergency existed and had the outlet sewer not been immediately completed the whole sewer system would have been ruined. We are not satisfied that proof was made of the existence of such condition of affairs, but even if it had, we do not think it would have warranted the officials in doing the work as they did by day labor. The section in question is mandatory in requiring the advertisement for bids and the fact that the work done by the city was made necessary by the abandonment of the contract by the contractor makes no difference in the rule.

In City of Chicago v. Hanreddy, 211 Ill. 24, it was held under section 50 article 9 of the City and Village Act, which contains similar language to that above referred to that ''to hold that the statute does not apply to an unfinished public improvement after the work has been abandoned by the contractor, would be to permit contracts for public improvements to be let

to irresponsible parties, which, when abandoned after some portion of the work had been done, would open wide the door to fraud and destroy competition, and enable city officials to do indirectly what in express terms they are prohibited from doing by the statute. The object of the statute is to require the municipalities of this state to advertise for bids upon any work or other public improvements which they propose to construct, and to let the same to the lowest responsible bidder. The statute is in general terms and applies to all public improvements where the costs exceed $500, and the fact that a contract for the improvement had once been let and the work abandoned before completion, if the cost of completing the same will exceed the sum of $500, does not authorize the municipality to complete the improvement by day labor, but a contract for its completion must be let to the lowest responsible bidder after an advertisement for bids. To hold otherwise would be to nullify the statute.''

Appellant also had a bond from the National Surety Co. to insure the completion of the contract of Norton & Co. This bond provided, ''if the said D. W. Norton & Co. shall well and truly build, construct and complete the said outlet sewer system according to said agreement and according to the plans, profiles and specifications hereto annexed or referred to, and shall indemnify and save harmless the said city of Centralia, Illinois, of and from all mechanics' lien or liens of any kind for work done or material furnished in and about the construction of said outlet sewer system, then this obligation to be void,'' etc.

This bond was to fully indemnify the city and save it harmless from all mechanics' liens, but for some reason which does not fully appear from the record, but which may have been satisfactory to the city officials at the time, the amount due on the bond was compromised and settled for a much less sum than its penalty and the city only proposes to give a credit for $1,000 of that sum to these lien holders.

Section 82 of the Local Improvement Act above referred to provides, that where the owners or contractors who have taken any contract, shall not complete the same within the time mentioned in the contract or within such further time as the board of local improvements may give them, said board may relet the unfinished portions of said work after pursuing the formalities prescribed hereinbefore for a letting of the whole in the first instance, and also provides: "All contractors, contracting owners included, shall at the time of executing any contract for such public work, execute a bond to the satisfaction and approval of the Board of Local Improvements of said city, village or town in such sum as the said board shall deem adequate, conditioned for the faithful performance of the contract," etc.

It is claimed by appellant that this provision of the statute is simply for the benefit of the city and not for the benefit of subcontractors or lien claimants. This defense might possibly be available in a suit at law, but this is a suit in chancery where appellant seeks relief for itself and it must therefore do equity. The fact is it had in its control a bond which would have completely indemnified it for all amounts necessarily paid to subcontractors who had established their liens as appellees had done. This bond is surrendered without requiring the payment of full indemnity and it now seeks to make appellees bear the loss. This we think is inequitable and should not be sustained in a court of equity.

Appellant also comes into court to seek relief after having failed to comply with the law which requires it to let its contract to the lowest bidder. It should not be permitted to be heard to say it did the work as cheaply as it could have been done had the completion of the contract been let to the lowest bidder. The law requires it to make the letting and the presumption of the law must be that such a letting would have been for the benefit of the city and appellees. The liens of

appellees were established before appellant proceeded in an illegal way to complete the contract itself and before it had compromised the bond. The officials of the city were then fully advised of the claims of appellees and all further steps were taken by them with that knowledge.

We are of opinion that the equities of this case are with appellees and that the decree of the court below should be affirmed.

*Affirmed.*