[L. A. No. 2408. In Bank.—December 27, 1909.]

## A. ST. C. PERRY, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

MUNICIPAL CORPORATION—LOS ANGELES—POWER TO CONSTRUCT PUBLIC WORKS BY DAY'S LABOR—CONSTRUCTION OF CHARTER.—The city of Los Angeles has authority under its charter to construct or complete the construction of public works or improvements involving an aggregate expenditure of more than five hundred dollars, without letting any contract for the work. The city may do such work by day's labor, under the authority and control of its board of public works, purchasing such material as it may require therefor. Neither sections 148 nor 207 of the charter prevents the doing of the work in such manner.

ID.—BOND ACT OF 1901.—There is nothing in the Bond Act of February 25, 1901 (Stats. 1901, p. 27), as amended March 19, 1907 (Stats. 1907, p. 609), which prevents a city from doing such work without letting a contract therefor, if authorized so to do by its charter.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Oscar A. Trippet, for Appellant.

Leslie R. Hewitt, City Attorney, Lewis R. Works, Assistant City Attorney, and W. B. Mathews, for Respondents.

ANGELLOTTI, J.—This is an appeal from a judgment in favor of defendants entered upon sustaining demurrers to plaintiff's amended complaint. The action was one to obtain an injunction preventing the officers of the city of Los Angeles from proceeding with the construction or completion of public works or improvements of any kind involving an aggregate expenditure of more than five hundred dollars, in any other way than by letting the same by contract to the lowest bidder in the manner prescribed by the charter of the city for the letting of contracts, and from paying any moneys on account of such work except where the work was done under such contracts. The real question as to which a determination is sought is whether the city may itself do such work without

letting any contract therefor, in other words, by day's labor, under the authority and control of the city by its board of public works, purchasing such material as it may require therefor.

The work or improvement specifically described in the complaint with which it was alleged the city officers were thus proceeding was an outfall sewer. Counsel for defendants state in their brief that this work was fully completed and paid for prior to the giving of judgment in this case in the court below, and this statement does not appear to be seriously disputed by counsel for plaintiff. The case made by the complaint would therefore appear to be a moot case so far as the outfall sewer was concerned. There are, however, general allegations to the effect that defendants are proceeding in the same manner with the construction of other work and improvements, both those for which bonds have been voted under the Bond Act of February 25, 1901 (Stats. 1901, p. 27), as amended March 19, 1907 (Stats. 1907, p. 609), and those for which no bonded indebtedness has been incurred. We shall assume purely for the purposes of this decision that these allegations sufficiently present the question we have stated, and, disregarding other points made by defendants in support of the ruling of the lower court, determine that question.

At the outset it should be stated that there is nothing in the Bond Act hereinbefore referred to that militates against the position of defendants. Section 9 of that act provides that "All contracts for the construction or completion of any public work or improvement or for furnishing labor or materials therefor, as herein provided, shall be let to the lowest responsible bidder," and prescribes a method of obtaining such bids. The same section provides, however, "that nothing herein contained shall be construed as prohibiting the municipality itself from constructing or completing such works or improvements, and employing the labor necessary therefor," and also that in cities operating under a charter framed under section 8 of article XI of the constitution, of which Los Angeles is one, the provisions of such charter as to the manner of letting contracts, etc., shall control. The proviso last above quoted was not, it is true, a grant of power to a municipality to itself do the work without letting a contract therefor. This was definitely decided in *Matthews* v. *Town of Livermore*, 156 Cal.

294, [104 Pac. 303, 319]. But it is a distinct recognition of the proposition that a municipality may have the power under its charter, or what practically constitutes its charter as in the case of towns operating under the Municipal Corporation Act, to construct a certain public work or improvement itself without letting any contract therefor, and a positive declaration that where it has such power as to the work or improvement for which bonds have been issued, nothing in the Bond Act is to be construed as depriving it thereof. The question whether it has such power is to be determined solely by the provisions of its charter, regardless of the provisions of the Bond Act. In *Matthews* v. *Town* of *Livermore,* 156 Cal. 294, [104 Pac. 303, 319], the court was perhaps not entirely correct in saying that the opening clause of section 9, taken alone, forbids any *work* except by contract duly let to bidders, that clause simply providing that: *"All contracts . . . shall be let to the lowest responsible bidder."* The court was not there called upon to carefully consider or to determine the exact meaning of this particular provision, but simply to determine whether the proviso relating to the doing of the work by the municipality itself was a grant of power to a municipality prohibited by its charter from so doing, and it was substantially held that, as is apparent from the language of the section, the sole object of the proviso was to make it clear that in constructing a work or improvement with the proceeds of bonds voted therefor under the act, a municipality might do the work itself without the medium of a contractor, if its organic law permitted the doing of such work in such manner. The sole question, then, is whether the city of Los Angeles has this power under its charter.

It is not disputed that the charter of Los Angeles in terms confers upon the city the power to construct the public improvements and do the public work referred to by the allegations of the complaint. By express provision of the charter, the board of public works is given charge, superintendence, and control of such public work as is here involved, the provision including the design and construction of all sewers, and the design, construction, alteration, repair, etc., of all public works and improvements, with the power to engage such employees therefor as may be authorized by the city council. These

general powers would seem to necessarily imply the power to have such work done by its own employees, unless that method be expressly or by necessary implication prohibited by other provisions of the charter.

The Los Angeles charter nowhere expressly prescribes that a contract must be let for the doing of any of this work. We find such express provisions in the organic acts of other municipalities, and the acts considered in cases relied on by plaintiff. For instance, the Municipal Corporation Act in so far as it is applicable to cities of the sixth class, being the act involved in *Matthews v. Town of Livermore,* 156 Cal. 294, [104 Pac. 303, 319], provided that "in all street and sewer work" as well as other work described therein, "when the expenditure required for the same exceeds the sum of one hundred dollars, *the same shall be done by contract, and shall be let to the lowest responsible bidder,*" etc. (Sec. 874, Municipal Corporation Act; [Deering's Gen. Laws, 1906, p. 906].) A similar provision is to be found in that portion of the same act applicable to cities of the fifth class. (Sec. 777, Municipal Corporation Act.) Provisions expressly requiring certain kinds of public work to be done "under contract" awarded after notice to the lowest responsible bidder are to be found in the San Francisco charter, as adopted in 1899, and in many other freeholders' charters. In the case of *Chicago v. Hanreddy,* 211 Ill. 24, [71 N. E. 834], a case much relied on by plaintiff, the statute in terms provided that "any work or other public improvement, when the cost exceeds $500, shall be let to the lowest responsible bidder in the manner prescribed by ordinance." Where such provisions as those instanced exist, as they do in very many statutes, it is necessarily clear, as was said in the Illinois case cited, that "no discretion is thereby conferred upon the city or any of its officers, as to whether the work or improvement shall be constructed under contract, or by day labor." When we come to the Los Angeles charter we find that the only provisions under which it is sought to require the enforcement of a similar rule are provisions requiring "all contracts" to be let and entered into in a certain manner, and providing that the city shall not be bound by "any contract" not let and entered into in the manner prescribed. (Secs. 148 and 207, Los Angeles charter.)

The language particularly relied on is the first paragraph of section 148 of the charter, which, so far as material, is as follows: "All contracts for the performance or furnishing of labor, materials or supplies, required for the execution of any service of which the board of public works has charge, superintendence, or control, or for the construction or completion of any work or improvement of the construction or completion of which the said board has charge, superintendence or control, . . . shall be let and entered into in behalf of the city by the board in the following manner." Then follow elaborate provisions as to notice, bids, and written contract. Plaintiff's counsel reads this as requiring not only that the construction of any work of which said board has charge shall be done by written contract, let in the manner prescribed, but also that the whole of any particular work or public improvement shall be let to one bidder and done under a single contract. In other words, he contends that a work like the outfall sewer or the Owens River aqueduct must, under this provision, be let as one job to one contractor. Manifestly there is no foundation for any such construction. The provision above quoted is to be read as if the word "required" had been again inserted before the words "for the construction or completion of any work or improvement," etc., where they first occur therein, so that what the provisions really mean is that "all contracts" for labor, materials, or supplies "required" for the execution of any service of which such board has charge, or "required" for the construction or completion of any work or improvement of which such board has charge, shall be let and entered into, etc. This is very clear in view of other language subsequently used in the same section. So there is absolutely no foundation for any claim that the board may not divide the work of constructing a single public improvement into as many sections as may be deemed advisable, making a separate contract for each section. Nor can we see anything in this language that prohibits the letting of separate contracts for materials or supplies, or any portion of the materials or supplies, that may be required in constructing any section of the work, or for the labor or any portion of the labor that may be required in any section.

By other provisions of sections 148 and 207 of the charter, a "contract" involving an expenditure of not exceeding five

hundred dollars is excepted from the requirements of being in writing and being let only after notice inviting bids. The charter provisions taken together undoubtedly require that wherever it is proposed to make an agreement for the purchase of certain materials or supplies for a sum exceeding five hundred dollars, or to make an agreement with another by which he is to furnish such labor for a sum of money exceeding five hundred dollars, a written contract must be let and entered into in the manner prescribed. But do they require anything else? We are of the opinion that they do not, and are satisfied that they should not be construed as prohibiting the doing of public work by the city itself by day's labor.

Provisions of the character of those contained in the Los Angeles charter are manifestly different from provisions requiring work to be done by contract, or to be let to the lowest bidder. According to the ordinary acceptation of the term "doing work by contract," it means the letting of the work or some portion thereof to some one who agrees to deliver the same completed for a specified price, and does not include the case of one who himself constructs an improvement by means of materials purchased directly by him and artisans and laborers directly employed and paid wages by him. Although the latter is doing the work by contract in the sense that he sustains a contractual relation to every artisan and laborer employed and to every materialman from whom he purchases materials, he is not doing the work by contract in the sense in which that term is commonly accepted either by laymen or lawyers. The general legislative recognition that this meaning is to be given to the term is shown by numerous acts, to some of which we have referred, and many freeholders' charters clearly show the same recognition. Of course, where a statute or charter declares that any work must be let to the lowest bidder, there is no possible basis for any other construction than one making bids and contracts imperative. The omission from the Los Angeles charter of any such provision intended to require that whenever a proposed improvement as either of those discussed is most significant. If it had been would cost more than five hundred dollars, the work must be done "by contract" let to the lowest responsible bidder, it would have been the simplest matter in the world to say so in plain terms, as has been said over and over again in other

acts and charters.  The failure to do so indicates that the framers of these charter provisions were guarding solely against the method of letting contracts for public work otherwise than to the lowest responsible bidder after public notice of the work to be done thereunder, the object being to prevent favoritism in the matter of letting contracts and the payment of a greater price than the work was reasonably worth.  There is nothing in the language used to indicate that it was designed to prevent the doing of the work by the city itself through the officers having such work in charge.  The doing of the work being expressly authorized, and the board of public works being expressly given charge of the construction thereof, the power to construct otherwise than "by contract" exists unless the necessary implication of sections 148 and 207 of the charter is such as to prohibit such method.  We are of the opinion that we would not be warranted in holding that these sections do imply any such prohibition.  The street cases cited by plaintiff were cases where the Street Improvement Act gave the power only to do the work in the way prescribed by the act, and the other cases cited are clearly distinguishable from this by reason of the particular language used.  The case of *Home Building etc. Co.* v. *Roanoke,* 91 Va. 52, [20 S. E. 895], is squarely in point for defendants.  (See, also, *Yarnold* v. *City of Lawrence,* 15 Kan. 103, 126.)

In view of what we have said the demurrers were properly sustained.

The judgment is affirmed.

Shaw, J., Sloss, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.