[Civ. No. 3435. Second Appellate District, Division One.—November 20, 1920.]

GARVEY SCHOOL DISTRICT, etc., et al., Appellants. v. B. H. PAUL et al., Respondents.

[1] BUILDING CONTRACT—ERECTION OF SCHOOL BUILDING—FAILURE OF CONTRACTOR TO COMPLETE WORK—RIGHT OF DISTRICT.—Under a clause in a contract for the erection of a school building providing that should the contractor at any time during the progress of the work refuse or neglect to supply a sufficiency of materials or workmen the owner should have the power to provide the same after three days' notice in writing given and finish the work and deduct the reasonable expense thereof from the contract price, the school district was not required, where the contractor failed to complete the work and there was no abandonment of the contract, to re-advertise for bids for such completion, but it had the right to complete the work itself in accordance with the terms of the contract.

[2] ID.—PERFORMANCE BY SURETY ON CONTRACTOR'S BOND—INEFFECTIVE OFFER.—An offer of performance on the part of the surety on the contractor's bond to perform the contract was too late where made after the expiration of the time limited in the three days' notice given it and the district had taken charge of the work, and was premature when considered with relation to the time when the actual liability of the surety accrued.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, Hugh Gordon, Assistant County Counsel, and Jerry H. Powell, Deputy County Counsel, for Appellants.

Hickcox & Crenshaw for Respondents.

CONREY, P. J.—This is an action on the contractor's bond given to the owner as security for the faithful performance of a contract made with the plaintiff school district by one B. H. Paul for the erection of a school building. The plaintiffs appeal from the judgment entered in favor of defendants.

The powers and duties of trustees of common school districts are, among others, the following: "To let all contracts involving an expenditure of more than two hundred dollars for work to be done or for materials or supplies to be furnished . . . , to the lowest responsible bidder who will give such security as the board may require or else to reject all bids; . . . For the purpose of securing bids the board must publish a notice calling for bids, stating the work to be done or materials or supplies to be furnished, and the time when and the place where the bids will be opened, at least once a week for two weeks in some daily or weekly newspaper published in the county, . . . " (Pol. Code, sec. 1617, subd. 20.) The Paul contract was let in the manner required by law. It was dated August 18, 1915, and by its terms the contractor was allowed 105 working days from that date within which to complete the contract. In other words, the work was to be finished about the middle of December, 1915. It was provided in paragraph 6 of the contract that "should the contractor at any time during the progress of said works, refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have the power to provide materials and workmen (after three days' notice in writing given) to finish the said works, and the reasonable expenses thereof shall be deducted from the amount of said contract price." The bond was executed by defendant Southwestern Surety Insurance Company. The other defendant company is an insurance company which later assumed the liabilities of the Southwestern Company. It was provided in the bond that the principal contract was therein expressly referred to and made part thereof.

The findings state "that on or about the sixteenth day of October, 1915, the contractor, B. H. Paul, ceased work on said building, and thereafter continuously and at all times up to about the twelfth day of January, 1916, failed to furnish labor and material to carry out said contract." In fact, he never did anything further on the contract, unless it be held that work done after the date last mentioned, or some part of it, was done by the school district in his behalf. On November 1, November 4, and November 22, 1915, the school district gave to the contractor and to the Southwestern Insurance Company three-day notices framed in ac-

cordance with said clause 6 of the contract. The parties notified did nothing in response to those notices, and the school district did not then furnish any materials or cause any work to be done on the building. Again, on the eighth day of January, 1916, the school district gave to the same parties a fourth notice in like form as before. Thereupon the school district, on the twelfth day of January, 1916, with the knowledge and consent of the contractor, took entire charge of the work and after said time furnished all of the necessary materials and workmen and caused the work of completing the school building to be carried on, and from and after that time the contractor took no part under the contract in the construction of the building, and all of the contracts let for labor and materials were let in the name of the school district and by the school district. Prior to the sixteenth day of October, 1915, the contractor had earned and had been paid the first and second installments of the contract price and there remained unexpended of the contract price the sum of $20,535. The contractor remained in charge of the premises until the twelfth day of January, 1916.

On the fourteenth day of January, 1916, the Southwestern Surety Insurance Company offered in writing to the school district that it would furnish all the necessary material and workmen to complete the contract and would fully and faithfully perform the conditions thereof, and demanded that it be permitted to complete the contract. This offer was refused by the school district, which at that time had taken charge of the work. Between the twelfth day of January and the twenty-first day of June, 1916, the school district expended in carrying on the work for the completion of said building the sum of $20,535, which was the reasonable value of all the material and workmen thus furnished. On June 21, 1916, the school district notified the contractor and said surety company that there had been expended on the school building the sum last mentioned, in addition to the sum previously paid to the contractor and that the building was not completed, and the school district requested and demanded that the contractor and said surety company proceed to complete the work in accordance with the contract. This the contractor and surety company wholly neglected and failed to do. There-

after the school district completed the building in accordance with the original plans and specifications, at an additional expense of $3,996.99, to recover which amount, together with certain alleged special damages, this action has been prosecuted.

The work done between the twelfth day of January, 1916, and the twenty-first day of June, 1916, whereby said sum of $20,535 was expended, was done by the school district without any publications calling for bids or specifying the time and place where bids were opened; in other words, without any attempt to let contracts in the manner described in the section of the Political Code to which we have referred.

Upon the facts found, judgment should have been rendered in favor of the plaintiff, unless the judgment should be affirmed for one of two reasons which on this appeal are relied upon by the respondents. These contentions are that the judgment should be affirmed, (1) for the reason that the school district made expenditures in excess of the statutory amount without advertising for bids as required by law; (2) for the reason that the surety company offered to perform the contract and fulfill all the obligations thereof.

It is contended by respondents that their first proposition is sustained by five decisions of the supreme court of this state. *Dougherty* v. *Foley,* 32 Cal. 403, and *Meuser* v. *Risdon,* 36 Cal. 239, are street assessment cases in which it was held that where a contractor failed to enter upon the contract or had abandoned the work, it was necessary for the municipality to re-advertise for bids. But the statute under which the proceedings in those cases had been conducted in terms provided that there must be a re-advertisement for bids under the circumstances stated. In this respect they are different from the statute in question in this case, inasmuch as said section of the Political Code is silent on the subject of re-advertisement for bids or reletting of contracts. In *Reams* v. *Cooley,* 171 Cal. 150, [Ann. Cas. 1917A, 1260, 152 Pac. 293], and *Matthews* v. *Town of Livermore,* 156 Cal. 294, [104 Pac. 303], the court was dealing with a situation created by the failure of public corporations to comply with the provisions of law governing the letting of original contracts, and not with any question pertaining to the duty or power of the district or corporation to proceed under circumstances like those presented in the

case at bar after a contract had been let in accordance with law.

*Foxen* v. *City of Santa Barbara,* 166 Cal. 77, [134 Pac. 1142], is the one case in which the facts are closely parallel to those in the case now before the court; with a difference, however, which we think is important. The city of Santa Barbara is a municipal corporation operating under a free-holders' charter in which there are sections which provide an exclusive method for the construction of all public works. Proceeding according to that method, the city entered into a contract for the boring of certain tunnels to develop water for use by the inhabitants of the city. It is stated in the opinion that "subsequently, with the consent of the defendant, the contractor abandoned the work and the water commissioners of the city thereafter prosecuted the construction of the tunnels." This work was done by employing engineers, foremen, bosses, and men to do the work without attempting to let a contract "to the lowest responsible bidder," as required by the charter. On examining the record in that case we learn that, as set forth in the findings, the contractor "did by and with the consent of said city, relinquish and abandon the said contract or contracts so far as they obligated him to construct the then uncompleted portion" of the described work. Therefore, in passing, we express the opinion that when the court said in the decision that the contractor "abandoned the work," those words were used in the sense of the findings; that is to say, that the contract was abandoned. It was held that under those circumstances the water commissioners did not have power to perform the work on the tunnels by day's labor, and that any contract which they made with the plaintiff in that connection was void.

[1] In the present action the contract was not abandoned by the contractor, nor was it abandoned by the school district. The contractor had failed to complete the work. The school district insisted upon its completion in accordance with its terms. In proceeding to do the work on and after the twelfth day of January, 1916, the school district was proceeding in accordance with the terms of a contract still in existence, which had been let according to law, and which by its terms provided for the then existing emergency. The provision thus made was a part of the contract of

suretyship. The public interests which were intended to be guarded by the provisions of section 1617, subdivision 20, of the Political Code, were fully protected by this procedure. The surety company was protected because it was first given the very opportunity provided for by the contract to complete the work, of which opportunity it did not avail itself within the time prescribed by the notice given in accordance with the contract, and further, because the sum thereupon expended by the school district for carrying on the work was only the reasonable value of the materials and workmen thus furnished.

We have not deemed it necessary to discuss the numerous decisions from other states which are referred to in the briefs, most of which sustain the position of appellants on this question. It is conceded that a few decisions run the other way, notably the case of *Chicago* v. *Hanreddy,* 211 Ill. 24, [71 N. E. 834], which is cited in the Foxen case, *supra.* We are satisfied that the rule contended for by respondents and indicated in the Foxen case, even if admitted as the true rule, should not be held to apply, unless the contract has been abandoned and thereby is at an end.

In *Bacigalupi* v. *Phoenix Building etc. Co.,* 14 Cal. App. 632, 639, [112 Pac. 892, 894], the first district court of appeal describes in apt words the purpose and effect of contract terms similar to those contained in section 6 of the present contract which we have quoted. The court said: "This paragraph has no application to the case where the contractor entirely abandons the contract, but only applies where he is proceeding under the contract, but fails to supply a sufficiency of materials or workmen to complete the contract within the time limited by the contract. It was intended to give the owner the right, under such circumstances and after giving the notice, to take the completion of the contract into his own hands and to deduct the cost thereof from the contract price. This we think to be the meaning of the paragraph as between the owner and the contractor, and by which the surety was bound." In legal effect, the work is being done under the contract and in its performance the owner is acting for the contractor, as it was agreed that he might do under those circumstances.

[2] The offer of the surety company to perform the contract, when considered with relation to the expiration

of the time limited in the three days' notice, and in connection with the fact that on January 12th the school district had taken charge of the work, was too late. On the other hand, if such offer be considered with relation to the time when the actual liability of the surety company accrued, it was premature. "Performance of the principal obligation, or an offer of such performance, duly made as provided in this code, exonerates a surety." (Civ. Code, sec. 2839.) But "where an obligation fixes a time for its performance, an offer of performance must be made at that time, within reasonable hours, and not before nor afterward." (Civ. Code, sec. 1490.) Upon the facts as they existed on the twelfth day of January, 1916, the school district had the right which it exercised to proceed with the performance of the work, and to charge against the contract price the reasonable expense thereof. When this had been done and the full amount of the contract price had been expended by or on behalf of the contractor—that is to say, on the twenty-first day of June—it was found that the work was not complete. Respondents cannot complain of the fact that at that time they were given an opportunity to complete the building, which offer they declined to accept. Neither can they complain that from and after that time the work of completion was done by a contract let to the lowest bidder after proceedings in accordance with the provisions of the Political Code. The result in any form is in its essence just the same. The liability had accrued and the amount thereof was to be determined in accordance with the reasonable cost of finishing the building. The additional expense thus incurred is found to have been the reasonable cost thereof.

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 17, 1921.

All the Justices concurred, except Lennon, J., who was absent.