COOPER *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—INJUNCTION—RIGHT OF TAXPAYERS TO ENJOIN ILLEGAL EXPENDITURE OF MONEY.

Where the common council of the city of Detroit was threatening to erect a municipal garage without complying with alleged charter regulations as to receiving competitive bids therefor, or by levying a tax assessment or providing for a bond issue to defray the cost of its construction, taxpayers whose interest in the fund or threatened damage to their property interest by its misuse

On right of taxpayer, in absence of statute, to enjoin unlawful expenditures by municipality, see note in 36 L. R. A. (N. S.) 1.

amounted to $100, or who had land worth $100 which was threatened with sale or liable to a lien for a tax in consequence of said proposed misuse of said fund could maintain a suit to restrain its threatened misuse.

2. SAME—PUBLIC WORKS NOT REQUIRED TO BE DONE BY CONTRACT—DETROIT CHARTER.

Title 4, chap. 8, § 8, and title 6, chap. 7, §§ 2, 3, of the charter of the city of Detroit, referring to the construction of public improvements by the city, construed and *held*, not to prohibit the city from doing the work with its own forces, and requiring that it be done by contract entered into with the lowest responsible bidder if said improvement cost over $500.

3. SAME— TAXPAYERS MAY ENJOIN EXPENDITURE OF MONEY NOT PROVIDED ACCORDING TO CHARTER.

Taxpayers were entitled to a decree enjoining a threatened expenditure of money by the city of Detroit for the erection of a municipal garage, where the charter provisions requiring the levying of a tax assessment or the issuing of bonds to provide the necessary money had not been complied with.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted January 12, 1923.    (Docket No. 8.)    Decided March 22, 1923.

Bill by Edgar B. Cooper and others against the city of Detroit and others to enjoin the building of a municipal garage.    From a decree dismissing the bill, plaintiffs appeal.    Reversed, and decree entered for plaintiffs.

*Routier & Nichols* (*George E. Nichols,* of counsel), for plaintiffs.

*Clarence E. Wilcox,* Corporation Counsel, and *Walter Barlow,* Assistant Corporation Counsel, for defendants.

MCDONALD, J.    The plaintiffs, who are citizens and resident taxpayers of the city of Detroit, seek to

restrain the city from proceeding with the erection of a municipal garage without first having complied with the city charter relative to the letting of contracts to the lowest responsible bidders, and without having levied a tax assessment or provided for a bond issue to defray the costs of construction. It appears that, desiring to provide a central garage for municipal use, the common council directed the city controller to supply $234,000 from the motor transportation fund to be used in purchasing a site. The site having been obtained, the council authorized the department of motor transportation to proceed with the erection of the building, supplying the labor by the use of the city's forces. It was estimated that 60 per cent. of the costs of construction would be for labor, and it was intended to perform this labor with certain of the city employees under the direction of Mr. Markham, the chief construction engineer of the municipal railway system. For the remaining 40 per cent. contracts were to be let to the lowest responsible bidders. General plans calling for the construction of a building to cost about $600,000 were approved by the council on the 2d day of February, 1922. After the work was commenced the plaintiffs filed this bill alleging that the defendant was without authority to delegate the erection of the building to the motor transportation department, that no bond issue had been provided for and no tax assessment levied before the commencement of the work, and that the use of the city's forces in any part of the construction was in violation of the city charter. The defendant answering says that the city charter does not require such work to be done by contract, that the method to be employed is left to its discretion, claims that it has provided for the cost of construction as required by the charter and insists that in any event the plaintiffs as private citizens cannot maintain

their suit.    On the hearing the circuit judge allowed the injunction for the reason that the defendant was without authority under the city charter to authorize the construction of the building by the department of motor transportation, holding that it must be erected under the supervision and control of the commissioner of public works.    Thereafter the council by resolution transferred the work to the department of public works, and the defendant filed a motion for leave to amend its answer setting up these facts.    The case was reopened, proofs were taken and the circuit judge then made a decree dismissing the plaintiffs' bill. From the decree so entered the plaintiffs have appealed.

The record presents the following questions:

1. Are the plaintiffs proper parties to institute and maintain this suit?    It is claimed that as private citizens they cannot institute proceedings to redress grievances on behalf of the public when their individual grievances are not distinct from those of the public at large.    This question has been before the court on several occasions.

In *McManus* v. *City of Petoskey*, 164 Mich. 390, it was said:

"The complainant as a taxpayer has a right to ask chancery to restrain a threatened misuse of a city fund, in two classes of cases, viz.:

"*First.*    Where his interest in the fund or threatened damage to his property interest by its misuse amounts to $100.

"*Second.*    Where he has land worth $100 which is threatened with sale, or liable to a lien, for a tax, in consequence of the proposed misuse."

This case sustains the right of the plaintiffs to institute their suit.    See, also, *Thomas* v. *Board of Sup'rs of Wayne Co.*, 214 Mich. 72, and cases therein cited.

2. Has the city of Detroit authority under its charter to construct this building or any part of it involving an expenditure of more than $500 without letting contracts therefor? The city has in its employ many draftsmen, engineers, mechanics, and common laborers. It proposes to use these forces in performing the larger part of the labor which is estimated at 60 per cent. of the cost of the building. The plaintiffs claim that the charter does not permit the city to use its forces for such purpose, but that all work, where the cost of construction exceeds $500, must be done by contract after competitive bidding. The question whether a city can construct a public building itself without letting any contract therefor, is, of course, to be determined solely from the provisions of its charter. The charter of the city of Detroit confers upon the common council the power "to authorize the construction of public buildings." Unless the construction of such buildings be limited to certain prescribed methods, it is not an unlawful exercise of power to follow some other method. In other words, unless by express language or by implication the charter requires the construction to be by contract, it may be by day labor of the city's employees. In the briefs of counsel our attention is called to the following provisions of the charter.

Section 8, chapter 8 of title 4 of the Detroit city charter reads as follows:

"Whenever the common council shall order any work of public improvement, it shall cause notice to be given forthwith to the commissioner of public works, who shall proceed to do such work or to make contracts therefor, subject to the approval of the council."

Sections 2 and 3, chap. 7, tit. 6, provide:

"SEC. 2. No contract shall be let or entered into for the construction of any public work, or for any

work to be done, or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing or supplying shall be commenced until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council, and a tax or assessment levied to defray the cost and expense of the same, and no such work, supplies, and materials shall be paid for or contracted to be paid for, except out of the proceeds of the tax or assessment thus levied.

"SEC. 3. No contract for the construction of any public building, sewer, paving, graveling, planking, macadamizing, nor for the construction of any public work whatever, nor for any work to be done, nor for the purchasing or furnishing of any material, printing or supplies for the city, if the expense of such construction, repairs, work, printing, materials, or supplies exceeds five hundred dollars, shall be let or entered into except to and with the lowest responsible bidder, with adequate security. No contract involving any expenditure exceeding five hundred dollars shall be let until a notice calling for bids shall have been duly published in at least one daily paper published in the city, for such period as the common council shall prescribe: *Provided*, however, that all purchases of materials and supplies of a less amount shall be on a competitive basis in the event that formal bids are not taken therefor."

As counsel for the plaintiffs read these provisions of the charter,

"No discretion is conferred upon the city or its officers to determine whether the work or improvement shall be constructed under contract or by day labor. No words are used in the charter which form the slightest basis for holding that it is discretionary or optional with the common council. If the cost of the work or improvement exceeds the sum of $500, the provision is mandatory that a contract shall be let after competitive bidding."

In support of this construction counsel say that, "the reasoning of the court in *City of Chicago* v. *Han-*

*reddy,* 211 Ill. 24 (71 N. E. 834), presents the best
solution of the question in the instant case and is the
controlling case on the subject." We are unable to
agree with this contention. The whole argument of
the court in that case is based upon a provision of a
charter which expressly requires all work and public
improvement where the amount to be expended ex-
ceeds $500, to be let to the lowest responsible bidder.

"Of course, where a statute or charter declares that
any work must be let to the lowest bidder, there is no
possible basis for any other construction than one
making bids and contracts. imperative." *Perry* v.
*City of Los Angeles,* 157 Cal. 146 (106 Pac. 410).

There is no such provision in the Detroit city
charter. The sections referred to relate only to in-
stances where it is proposed to do the work by con-
tract, but nothing is said from which an inference
could be drawn that it could not be done by some other
method. In fact, section 8 provides that when the
work is ordered by the council and notice thereof is
given to the commissioner of public works he "shall
proceed to do such work or make contracts therefor."
Counsel construe this to mean that he shall proceed
to do such work only when the cost is less than $500.
There is nothing in the language of the charter that
could furnish a basis for any such construction. The
plain and only inference from section 3 is that where
the cost of construction is less than $500 the work
may be done by contract without competitive bidding.
No reference is there made to any other mode of doing
the work. If the framers of the charter had intended
that, when the cost of construction exceeded $500, all
work should be done by contract, they undoubtedly
would have said so in express terms. The omission
of any definite method of doing the work would in-
dicate that they intended to leave something to the
discretion of the officials who had it in charge.

We think the language used in *Perry* v. *City of Los Angeles, supra,* is applicable here.     Speaking of the omission from the Los Angeles city charter of a provision requiring all work and improvements to be done only by contract, the court said that if it had not been so intended,

"it would have been the simplest matter in the world to say so in plain terms, as has been said over and over again in other acts and charters.     The failure to do so indicates that the framers of these charter provisions were guarding solely against the method of letting contracts for public work otherwise than to the lowest responsible bidder, after public notice of the work to be done thereunder; the object being to prevent favoritism in the matter of letting contracts and the payment of a greater price than the work was reasonably worth.     There is nothing in the language used to indicate that it was designed to prevent the doing of the work by the city itself through the officers having such work in charge."

And under a similar charter provision it was said in *Home Building & Conveyance Co.* v. *City of Roanoke,* 91 Va. 52 (20 S. E. 895, 27 L. R. A. 551):

"We see nothing in that clause of the charter which inhibited the city from constructing public buildings or improvements under direction of its own engineers and officers.     It simply provides that when such buildings or improvements are let to contract, it shall be to the lowest bidder, and after advertisement, as provided.     Any other construction of that provision would prove dangerous, if not injurious, to any city, since we see from this record that if that construction had been followed, the approaches to the overhead bridges in the city of Roanoke would have cost the city $8,000, or $10,000, more than they will under the mode of construction adopted by the city."

We find nothing in the charter of the city of Detroit which expressly or by implication prevents the city from using its own forces in performing the labor necessary for the construction of its municipal garage,

though the cost of such labor should exceed $500. The city of Detroit has the power under its charter to construct public works or improvements where the amount to be expended exceeds $500 without the letting of contracts for the work. It may do such work with its own forces under the direction and control of the commissioner of public works.

3. Was the defendant without authority to commence and carry on the construction of the building without having provided the necessary funds by tax levy or bond sale? Section 2 of the charter which we have already quoted provides in part that no such work shall be commenced until

"a tax or assessment is levied to defray the cost and expense of the same, and no such work, supplies and materials shall be paid for or contracted to be paid for, except out of the proceeds of the tax or assessment thus levied."

Other sections of the charter considered in connection with the above show that expenses of constructing the building in question can be provided for in three ways only, viz., by tax levy, by bond issue or by borrowing from the general surplus fund. It is clear from the testimony of the city controller that the defendant did not follow any of these three methods, but proposed to meet the expenses by diverting money from various other funds. The claim of counsel for defendant in his brief, that to meet this expense appropriations were made and that the amounts were collected in the municipal budgets for the years 1920 and 1921, finds no support in the record. The evidence shows that the money so raised was for other purposes and belonged to other funds. The council was acting without authority in authorizing the city controller to transfer money from other funds to a municipal garage fund. *Niles Bryant School of Piano Tuning* v. *Bailey*, 161 Mich. 193. In

this matter the charter leaves the council no discretion, but points out the methods to be followed in meeting the expense of construction. It is not made imperative that the money be in the city treasury before the building is commenced, but it must be provided for by lawful borrowing or by tax levy. Borrowing from this and that fund does not meet the requirements of the charter, but is in contravention of its express provisions. Because the work was commenced and was being carried on without complying with the provisions of the charter relative to providing a fund to defray the costs of construction, the plaintiffs are entitled to a decree enjoining further prosecution of the work.

The decree of the circuit judge is reversed and a decree in harmony with this opinion will be entered. Plaintiffs will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.