# TRUSTEES OF THE SANITARY DISTRICT OF CHICAGO

### *vs.*

## EDWIN W. POE ET AL., RECEIVERS OF THE UNITED SURETY COMPANY.

*Municipal Corporation—Completion of Forfeited Contract.*

That the act under which the Sanitary District of Chicago was organized required that all contracts for work to be done by such municipality be let to the lowest bidder after ten days' public notice, did not preclude the Trustees of the District from completing, by day labor and under the supervision of its own engineer, a contract which, after having been let to the lowest bidder, had been forfeited by his failure to comply with its terms, such mode of completion in such case having been expressly provided for in the contract. p. 548

The Sanitary District having completed the work as promptly as possible, and in as economical a manner as was consistent with the facts and circumstances of the case, it could not be claimed that the district failed in its duty of mitigating damages by not letting the contract to a new and practical contractor. p. 549

*Decided June 27th, 1921.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*J. Kemp Bartlett* and *Morton S. Cressy*, with whom were *Walter E. Beebe, William F. Mulvihill* and *Bartlett, Poe & Claggett* on the brief, for the appellant.

*Frank B. Ober*, with whom were *Janney, Stuart & Ober* on the brief, for the appellee.

Briscoe, J., delivered the opinion of the court.

The Sanitary District of Chicago is a municipal corporation, created by an Act of the General Assembly of Illinois, for the purpose of removing obstructions in the DesPlaines and Illinois Rivers, and to care for the sewage of the Sanitary District, consisting of the City of Chicago, and other municipalities within Cook County, Illinois, and a large part of that county.

On the 26th of May, 1909, the appellant, the Trustees of the Sanitary District of Chicago, entered into a contract with one Frank F. Healey for doing all the work, and furnishing all the materials and labor necessary for the excavation and construction of what is known as Section Seven of the North Shore Channel of the Sanitary District of Chicago, in the County of Cook, Illinois.

The work consisted of the excavation of a channel between certain points stated in the contract, and the construction of certain bridges, also designated in the contract.

The contract provided that the contractor should furnish a bond in the sum of thirty thousand dollars, for the work under the contract, with good and sufficient sureties, conditioned for the faithful performance of all the terms and conditions of the contract and on the 26th of May, 1909, a bond was executed by the contractor, as principal and the United Surety Company of Baltimore, as surety, in the penal sum of thirty thousand dollars, as required by the contract.

By the twenty-first general condition of the contract, it is provided in part as follows:

"It is further agreed by the said party of the second part that if the work to be done under this contract shall be abandoned, or if it shall be assigned by him, or if the contract is not finished on September 1, 1910, or if he loses control of the work from any cause, excepting acts of God and the public enemy, or if the rate of progress is not such as to assure its completion within the time specified, or if at any time the engineer shall be of the opinion and shall so certify in writ-

ing to the said party of the first part that said work, or any part thereof, is unnecessarily and unreasonably delayed, or that the contractor is willfully and persistently violating any of the conditions or covenants of this contract, or is not fulfilling said contract in good faith, the said party of the first part shall have the power to notify the said contractor to discontinue all work, or any part thereof, as may be designated by the said party of the first part, and the said party of the first part shall thereupon have the power either to complete said work by contract or to employ such men and teams and to obtain such machinery, implements and tools, and to purchase such materials as the said engineer may deem necessary to complete the work herein described, or any part thereof. And in so doing, said engineer may use such tools, implements and materials as may be found upon the line of said work. The cost of so doing such work by the said engineer shall be charged to the said contractor, and the expense so charged shall be deducted and paid by the said party of the first part out of such moneys as may be due, or at any time thereafter become due to said contractor, under and by virtue of this contract, or any part thereof, so far as the same shall suffice therefor; and the balance, if any, shall be paid by said contractor on demand."

On the 16th of day of February, 1910, the contract was forfeited by the delay of the contractor in the performance of the work, and the contractor and his surety were notified to discontinue all work under the contract. The unfinished work under the contract was ordered by the Trustees of the Sanitary District to be completed by the Chief Engineer, according to the orders set out in the record and in part as follows:

"Ordered, That Frank F. Healey be and he is hereby notified to discontinue forthwith all work under a contract heretofore entered into between himself and The Sanitary District of Chicago, dated May 5, 1909,

and approved May 26, 1909, for the excavating of a channel on what is designated as section seven of the North Shore Channel, together with certain bridge work thereon; and be it further

"Ordered, That the chief engineer of The Sanitary District of Chicago be and he is hereby authorized and directed to forthwith begin and complete all the now unfinished work on said contract, and that the said chief engineer and president of the board of trustees of said district be further authorized to employ such men and teams, and obtain such machinery, implements and tools, and to purchase such material as the said engineer may deem necessary to complete all the work remaining unfinished on said contract."

This contract was completed by the Sanitary District, but at the additional cost of $29,802.77, in excess of the original contract price, and for this amount a claim was filed against the Receivers of the United Surety Company, the appellees on the record now before us, in the liquidation of the business of that company.

A statement account of the claim was filed with the auditor, and is set out in the record as follows:

"Statement account Frank F. Healey contract for the excavation of section 7 of the North Shore Channel, for the construction of the substructures of the Main Street and Howard Avenue bridges, for the construction of struts for the Oakton Avenue bridge and for the erection of the superstructures for the Main Street, Oakton Avenue and Howard Avenue bridges, as per contract dated May 5, 1909 (pages 643-65 of proceedings). Contractor failed to finish the work covered by said contract and The Sanitary District of Chicago completed same:

Amount expended by The Sanitary District of Chicago to complete contract after forfeiture of same, as per detailed statement attached hereto ............ $91,171.90

Amount paid contractor in cash, as follows:
  Voucher No. 1 (Gen. file No.
    36566). . . . . . . . . . . . . . . . . .$3,576.74
  Voucher No. 2 (Gen. file No.
    36754). . . . . . . . . . . . . . . . . . 1,168.51
  Voucher No. 3 (Gen. file No.
    37099). . . . . . . . . . . . . . . . . . 1,450.19
                                      —————————     6,195.44

Amount paid the C. & N. W. Ry. Co. for
  making fill at the C. & N. W. Ry. Co.'s
  bridge approaches and Weber coach yard
  not made by contractor, said fill being one
  of his contract obligations (see vouchers
  issued to C. & N. W. Ry. Co., account
  said railway company's new bridge, May-
  fair Cutoff). . . . . . . . . . . . . . . . . . . . . . . /. . .     4,443.16
                                              ——————————————

Total amount expended by Sanitary Dis-
  trict, account Healey contract. . . . . . . . .$101,810.50
Less amount the Sanitary District would
  have paid the contractor if he had per-
  formed all the work specified in contract,
  as follows:
Excavation, 424,025 IC. Y.
    at 14c. . . . . . . . . . . . . . . . . .$59,363.52
Erection of bridge super-
    strucure at Main Street. . . .    2,000.00
Erection of bridge super-
    structure at Oakton Avenue.    2,000.00
Erection of bridge super-
    structure at Howard Avenue    2,000.00
Completed concrete cylinders,
    5,121 C. F. at 70c. . . . . . . . .    3,585.12
Portland cement concrete,
    279.9 C. Y. at $8.00. . . . . .    2,239.20
Reinforcing bars, 23,983 lbs.
    at 3c. . . . . . . . . . . . . . . . . .      719.49

Timber culverts and flume,
    8.7% of $1,154.00 . . . . . . . .    100.40
                                    ——————  72,007.73

Balance being excess claimed by Sanitary
    District. . . . . . . . . . . . . . . . . . . . . . . . . . . $29,802.77."

It appears that the auditor of the court disallowed this claim of The Sanitary District in his report, and from an order of the Circuit Court of Baltimore City, overruling appellant's exceptions to the disallowance of the claim, this appeal has been taken.

The contention upon the part of the appellees is, first, that the appellant cannot recover, because the damages claimed were the result of its own *ultra vires* act in completing the contract by day labor, instead of reletting the work to another contractor; second, assuming that the appellant had the power to complete the work by day labor, that, under the facts of this case, it ought not to have exercised the power because of the duty it owed to appellee to mitigate the damages.

The powers and duties of the Trustees of the Sanitary District of Chicago, it will be seen, have been defined and approved by a number of decisions of the Supreme Court of Illinois. The corporation was organized and created for the purpose of . constructing a sewage disposal system, and as stated by the Supreme Court of Illinois in *Gentleman* v. *Sanitary District,* 260 Ill. 320, no other corporation has powers commensurate with it. It was organized because of this fact. The Act authorizing its organization was passed giving it power to do what no other corporation could do, and its legality has been sustained by the courts. *Wilson* v. *Board of Trustees,* 133 Ill. 443; *People ex rel.* v. *Nelson,* 133 Ill. 563; *Sanitary District* v. *Chic. & A. R. R. Co.,* 267 Ill. 252.

The general power of the Board of Trustees is contained in Section Seven of the Sanitary District Act, and the Board of Trustees is given the power to lay out, establish, construct and maintain its channels as follows:

> "The board of trustees of any sanitary district or-
> ganized under this act shall have power to provide
> for the drainage of such district by laying out, estab-
> lishing, constructing and maintaining one or more
> main channels, drains, ditches and outlets for carry-
> ing off and disposing of the drainage (including the
> sewage) of such district, together with such adjuncts
> and additions thereto as may be necessary or proper
> to cause such channels or outlets to accomplish the
> end for which they are designed in a satisfactory
> manner;" * * *

Where the Board of Trustees desires to let work by con-
tract, and not perform the work itself, Section Eleven pro-
vides as follows:

> "All contracts for work to be done by such munici-
> pality, the expense of which will exceed five hun-
> dred dollars, shall be let to the lowest responsible bid-
> der therefor upon not less than ten days' public notice
> of the terms and conditions upon which the contract
> is to be let having been given by publication in a
> newspaper of general circulation published in said dis-
> trict, and the said board shall have the power and
> authority to reject any and all bids and readver-
> tise;" * * *

The contract in this case between The Sanitary District of
Chicago and Frank F. Healey, contractor, dated the 26th of
May, 1909, we think was a valid exercise of the authority
of the Board of Trustees and the work to be done was clearly
within the purposes for which The Sanitary District had been
organized.

The original contract was let under the provisions of Sec-
tion Eleven of the Act, and there is no question raised as to
the legality of the original contract. The contract specifically
provided that, in case the contractor should fail for any reason
to complete the contract by September 1, 1910, or to make
the progress required by section eighteen of the general con-
ditions, that The Sanitary District should have the right to

proceed with its own employees and by day labor to complete the contract as stated in section twenty-one of the general conditions of the contract.

The contract was forfeited by a failure of the contractor to perform it in accordance with its terms and we see nothing, in the Act creating The Sanitary District, that would prevent the Trustees of the Sanitary District from completing the contract by day labor, under direction of its own engineers and officers, as set out in the contract.

Similar provisions in contracts of this kind have been held valid by a number of state courts.

In *Home Building and Conveyance Co.* v. *Roanoke,* 91 Va. 52, the court said: "It is, however, contended by appellant that because Section 50 of the charter of Roanoke requires all contracts for the erection of public improvements or buildings within the jurisdiction of the city council to be let to the lowest responsible bidder, after notice, etc., all the acts and doings of the city in connection with the building or construction of the bridge approach in Randolph Street are manifestly contrary to law and illegal—*ultra vires.* We see nothing in that clause of the charter which inhibited the city from constructing public buildings or improvements under direction of its own engineers and officers. It simply provides that when such buildings or improvements are let to contract, it shall be to the lowest bidder, and after advertisement, as provided. Any other construction of that provision would prove dangerous, if not injurious, to any city, since we see from this record that, if that construction had been followed, the approaches to the overhead bridges in the City of Roanoke would have cost the city $8,000 or $10,000 more than they will under the mode of construction adopted by the city." *Foxen* v. *Santa Barbara,* 166 Cal. 77; *People* v. *Peyton,* 214 Ill. 376; *Perry* v. *Los Angeles,* 157 Cal. 146.

In *Tiedeman on Municipal Corporations,* 3911, Sec. 172, it is said : "If however, a contract has been properly awarded to the lowest bidder, who has defaulted and abandoned it, a new advertisement and award is not necessary, the original

contractor having made himself liable for the extra expense incurred." 28 *Cyc.* 967; 4 *McQuillan, Mun. Corp.*, p. 3955.

The Hanreddy decision (211 Ill. 24) and other similar decisions relied upon by the appellee, are clearly not applicable to this case. The Sanitary District Act was passed in 1889, and The Sanitary District is not governed by the same Act as the City of Chicago. The decisions affecting "the Cities and Villages Act" of Chicago, are not therefore controlling in this case.

The answer to the second proposition, that the appellant failed in its duty of mitigating the damages, by not letting the contract to a new and practical contractor, is free from difficulty.

Under section twenty-one of the general conditions of the contract, it was provided that, upon the failure of the contractor to perform the contract, then the appellant, the party of the first part, thereupon shall have the power either to complete the work by contract or employ men, etc., to complete the work as described in the contract.

The testimony of Edward J. Kelly, the engineer, as to the cost of completing the work by the Board of Trustees of the Sanitary District, is as follows: "The cause of the excess cost of the work between the amount of Healey's bid and the amount that the district ultimately did the work for was: In the first place, that the Healey contract was behind time and it was necessary to at least double the amount of machinery there, which meant the purchase, upkeep and running of a Snable and Quinn excavator, which was an expenditure of $15,000; and the repair and running of the district machinery, and the additional cost of superintending the work and rushing the job which always runs into more money. There were a number of other factors entering into this additional expense. A portion of this increased cost is for certain work that was done in making a fill for the Chicago & Northwestern Railroad. According to the contract Healey was supposed to make certain fills in that vicinity, which he didn't do, and it was necessary to have the railroad company do it before the

time of starting the work. For that reason, The Sanitary District had to dump its material away from that particular spot and that cost considerable money. They also had to pile some of the spoil so high on one side of the channel that it caused a slide and occasioned extra cost there."

The proof also shows that the work was done as promptly as possible, and in as economical a manner, as consistent with the facts and circumstances of the case.

We therefore hold that the contract in this case, between The Sanitary District of Chicago and Frank F. Healey on May 26, 1909, was a valid and binding contract and that the appellant was clearly within its rights in completing the work, as provided by the terms of the contract. The defense of *ultra vires* relied upon by the appellee, it is clear, cannot prevail or be sustained, on the facts of the case.

As the United Surety Company of Baltimore, in its bond, dated the 26th day of May, 1909, guaranteed the faithful performance of the work and contract by the contractor, Healey, according to the terms stated therein, there can be no question as to their liability for the loss sustained by the appellant in completing the work under the contract, and which appears from its claim filed in these proceedings.

As this conclusion disposes of the case, it is not necessary to discuss the other questions presented by the briefs and in the oral arguments of the case.

For the reasons stated, the orders of the Circuit Court of Baltimore City, dated the 2nd day of September, 1920, and the 7th day of January, 1921, in so far as they overrule the exceptions of The Sanitary District of Chicago to the auditor's account and report, filed herein, and disallowing the appellant's claim for $29,802.77, be reversed and the cause is remanded, with directions that an order be passed sustaining the exceptions to the auditor's account and allowing a distribution on the appellant's claim.

> *Orders reversed, cause remanded, the costs to be paid by the receivers out of the estate.*