STATE ex rel COLLINS, Respondent, v. HALLADAY, et al, Appellants.

(252 N. W. 733.)

(File No. 7581.   Opinion filed February 13, 1934.)

*Walter Conway,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for Appellants.

*Van Slyke & Agor,* and *Douglas Bantz,* all of 'Aberdeen, for Respondents.

ROBERTS, P. J. Chapter 59, Laws of 1931, appropriates $100,000 or so much thereof as may be necessary "to build and equip a building for girls at the School and Home for the Feeble Minded." This action was brought to obtain an injunction against the members of the state board of charities and corrections and other officers preventing the construction of such building without advertising for bids and letting of a contract to the lowest responsible bidder. Findings of fact by the trial court are not controverted. It appears from such findings that the defendant board "at a meeting held for such purpose decided and determined to build and construct the building without letting a contract * * * but by employment of day labor, and also using the regularly employed laborers at said institution and inmate labor; that all the

work which has already been performed in connection with the construction of said building was performed under the supervision and direction of the defendant board; that the basement was constructed without letting a contract for construction thereof * * *; that the aggregate cost of the labor employed by the board in connection with the construction of the basement of said building is far in excess of five hundred dollars"; that the defendant board has "purchased material such as sand, gravel, cement, lumber and steel and other necessary material, all of which purchases as is indicated by the vouchers of said institution were 'direct purchasing orders.'" It further appears that the "aggregate amount of all purchases of material, supplies and commodities purchased in connection with the portion of the building already completed is far in excess of five hundred dollars," and that the board and the superintendent of the institution "threaten and intend to construct the entire building * * * without a contract for construction thereof, by the employment of day labor and also using the regularly employed laborers at said institution and inmate labor, and by purchasing of materials without a public advertising for bids and without a public letting."

The trial court concluded, first, that chapter 277, Laws of 1923, constitutes the only authority for the construction of the building, and, second, that such statute requires the construction to be effected by advertising for bids and by a contract for its construction. The defendants by proper assignments of error challenge the correctness of such conclusions of law. The statute referred to and upon which the trial court based its conclusions reads as follows: "The board shall have power to make contracts for service, the erection of buildings, the purchase of lands, materials and supplies needed, except such supplies as are under the supervision of the commissioner of public printing; and in carrying out such contracts to have the power to expend money, exact and collect penalties, and to purchase and sell property within the limitations of the state and national laws; provided, that all contracts for the erection and repair of buildings and the purchase of ordinary supplies exceeding in value five hundred dollars except coal needed by the institutions, shall be by means of publicly advertised competing bids and public letting; and provided further, that no member of the board shall be directly or indirectly pecuniarly

interested in such contract, and the board may bring suit in the proper court in its own name, to enforce any contract made by it and any suit relating to such property, or to the care, custody, control, management or improvement thereof, and it shall be the duty of the attorney general to prosecute any such suit upon the request of the board. Any money collected upon any judgment obtained under the provisions of this section shall be paid into the treasury for the benefit of the penal institutions and credited to the proper fund or funds; it being intended by this section to confer and it does confer upon the board of charities and corrections all powers usually exercised by such boards and which are necessary to the proper legal management of the penal institutions placed under its control, and the property belonging to the same."

This statute provides that the intent and purpose thereof is to confer upon the board of charities and corrections "all powers usually exercised by such boards and which are necessary to the proper legal management of the penal institutions placed under its control. The term "penal institutions," counsel for the defendants urge, can apply only to a state prison and other reformatories, and that the statute can have no application to the School and Home for the Feeble-Minded. The Northern Hospital for the Insane was located at Redfield and placed under the control of the state board of charities and corrections by chapter 101, Laws of 1893. The purpose of the institution as defined by section 2 of that act was to provide for "the custody and treatment of insane persons," but the purpose as subsequently defined by sections 1 and 3 of chapter 139, Laws of 1905, which have been incorporated into the Revised Code of 1919 as section 5531, is to provide for the care and education of feeble-minded persons. By the enactment of chapter 281, Laws of 1913, the name of the institution was changed to the "State School and Home for the Feeble Minded." The institution has continued under the control and supervision of the state board of charities and corrections. Section 5571, Rev. Code 1919, as amended by chapter 275, Laws of 1925, and section 5530, Rev. Code 1919.

Article 14 of the state Constitution relates to state institutions. The first section of this article provides that "charitable and penal institutions of the state * * * shall consist of a penitentiary, insane hospital, a school for the deaf and dumb, a school for the

blind and a reform school," and does not distinguish charitable from penal institutions. Section 2 provides that such institutions shall be under the control of the state board of charities and corrections "under such rules and restrictions as the legislature shall provide." The other sections of this Article of the Constitution refer to the educational institutions of the state which are placed under the control of a board of five members which the Legislature has designated as the board of regents. The provisions of section 5571, Revised Code 1919, originally enacted by chapter 58, Laws of 1897, define certain powers and duties of the board of regents. The language of the statute above quoted is precisely the same as section 5571, except that the amount of five hundred dollars is inserted in lieu of two hundred, and for the words "educational institutions" there is the substitution of "penal institutions." The Legislature clearly did not have in mind when it enacted the statute under consideration a differentiation between charitable and penal institutions, but had reference to those institutions under the control and supervision of the state board of charities and corrections as distinguished from other state institutions. If the Legislature had desired to limit the application of this statute, it would have been a simple matter to have designated the institutions by name to which the act applies.

It is insisted by plaintiff's counsel, and it was so decided by the court below, that under the act of 1923 the defendant board is required to let a single contract for the construction of a building where the total cost exceeds $500, and that therefore the board has no authority to have the construction of a building done by labor employed directly by the board and without advertising for competitive bids.

Plaintiff relies principally upon the case of City of Chicago v. Hanreddy, 211 Ill. 24, 71 N. E. 834, 836. The statute (Laws Ill. 1871-72, p. 257, art. 9, § 50) considered by the Illinois court provides that "any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder," and it was held that no discretion under such statute was conferred upon a city or its officers to undertake a public improvement either by contract or day labor. If the work or other public improvement exceeds in cost the sum specified, the Illinois statute makes it imperative that the contract be let to the lowest responsible bidder.

A similar provision was considered in Foxen v. City of Santa Barbara, 166 Cal. 77, 134 P. 1142. The city charter construed by the court required erection of all public buildings and works involving the expenditure of more than $100 to be let to the lowest bidder. To the same effect is West v. Lysle, 302 Pa. 147, 153 A. 131.

It is contended, however, by the defendants that there is a clear distinction between provisions requiring all public work or improvements to be let upon competitive bids and provisions that all contracts for public improvements, exceeding in some instances a stated amount, shall be similarly let. The court in Perry v. City of Los Angeles, 157 Cal. 146, 106 P. 410, 411, construed a charter provision requiring "all contracts for the construction or completion of any public work or improvement or for furnishing labor or materials therefore, as herein provided, shall be let to the lowest responsible bidder." It was there held that these provisions would not prevent the defendant city from constructing a public improvement by day labor. The court distinguishes between such provisions and provisions requiring all public work and improvements to be done by contract:

"Provisions of the character of those contained in the Los Angeles charter are manifestly different from provisions requiring work to be done by contract, or to be let to the lowest bidder. * * * Where a statute or charter declares that any work must be let to the lowest bidder, there is no possible basis for any other construction than one making bids and contracts imperative. The omission from the Los Angeles charter of any such provision as either of those discussed is most significant. If it had been intended to require that whenever a proposed improvement would cost more than $500, the work must be done 'by contract' let to the lowest responsible bidder, it would have been the simplest matter in the world to say so in plain terms, as has been said over and over again in other acts and charters. The failure to do so indicates that the framers of these charter provisions were guarding solely against the method of letting contracts for public work otherwise than to the lowest responsible bidder, after public notice of the work to be done thereunder; the object being to prevent favoritism in the matter of letting contracts and the payment of a greater price than the work was reasonably worth. There is nothing in the language

used to indicate that it was designed to prevent the doing of the work by the city itself through the officers having such work in charge. The doing of the work being expressly authorized, and the board of public works being expressly given charge of the construction thereof, the power to construct otherwise than 'by contract' exists."

The argument of the court rests on the premise that the city had authority to construct the public improvement, and that, unless the city was by other provision required to construct such improvement by contract, it would not be prevented from doing the work by day labor.

Construing similar provisions, the court in Cooper v. City of Detroit, 222 Mich. 360, 192 N. W. 616, 618, arrived at the same conclusion: "We find nothing in the charter of the city of Detroit which expressly or by implication prevents the city from using its own forces in performing the labor necessary for the construction of its municipal garage, though the cost of such labor should exceed $500. The city of Detroit has the power under its charter to construct public works or improvements where the amount to be expended exceeds $500 without the letting of contracts for the work. It may do such work with its own forces under the direction and control of the commissioner of public works." See, also, Home Building & Conveyance Co. v. Roanoke, 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551; State ex rel McClure v. Wallschlaeger, 137 Wis. 136, 118 N. W. 643; Boecking v. City of Oklahoma, 162 Okl. 104, 19 P. (2d) 1082; Trustees of Sanitary District v. Poe, 138 Md. 541, 114 A. 714.

The state board of charities and corrections is a constitutional body vested with the control of the charitable and penal institutions "under such rules and restrictions as the legislature shall provide," as we have indicated. In the exercise of its control over such institutions, the plaintiff contends that the board is confined to such authority as may be conferred by the Legislature; that no authority has been conferred upon the defendant board to construct buildings other than by the provisions of chapter 277, Laws of 1923; and that, if the board is to undertake the erection of a building, it must comply with the provisions of that statute and let a contract for its construction after "public advertising for competing bids." The defendant board, without public corporate

entity vested with granted powers, is an agency of the state exercising powers and duties conferred upon it by the Legislature. Mullen & Rouke v. Dwight, 42 S. D. 171, 173 N. W. 645; State v. Dailey, 57 S. D. 554, 234 N. W. 45. Beyond the limit of authority defined by the Legislature, the defendant board cannot act, and, since the nature and extent thereof is fixed by statute and not by the Constitution, it is not necessary to determine whether the State School and Home for Feeble-Minded is an institution under the control of defendant board within the contemplation of the constitutional provisions herein mentioned. If we may assume that the defendant board has the usual powers incidental to the control and supervision of an institution, the authority to construct a building is not implied, though it may be necessary for the proper maintenance of the institution. An expenditure for the construction of a building is ordinarily regarded as an extraordinary expenditure, and a special appropriation is made for its construction as was done by the enactment of chapter 59, Laws of 1931, and the necessity therefor determined directly by the Legislature. The appropriation of funds for the construction of a building at a state institution merely constitutes the setting apart and designation of the amount and purpose for which the funds are authorized, and does not affect the manner in which they shall be expended. In the absence of a contrary intent, the expenditure of such appropriation must be made in the manner prescribed by statute applicable to the board under whose direction the expenditure is to be made. If an appropriation were authorized for the construction of a building, and no provisions for construction by contract or otherwise were made, the board would doubtlessly have implied authority to resort to any proper method. Such situation, however, is readily distinguishable.

The statute under consideration authorizes the board "to make contracts for service, the erection of buildings, the purchase of lands, materials and supplies needed." Then follow provisions declaring "all contracts for the erection and repair of buildings * * * exceeding in value five hundred dollars * * * shall be by means of publicly advertised competing bids and public letting." If the building were constructed by the employment of laborers directly by defendant board, a contractual relationship would exist between the state and each employee. But this is not

the sense in which the term "contract" is used in the statute. In the ordinary acceptation of the term in a statute requiring work to be done by contract, it means the letting of the work or some portion thereof to a person who agrees to complete the same for a stipulated price. The language of this statute does not require that the construction of a building shall be let under a single contract. Separate contracts for materials or labor or for the portion of materials or labor that may be required in the construction of a specific part of a work may be let. Perry v. Los Angeles, supra. For example, separate contracts might be let for excavation, for heating and plumbing installation, for electric wiring, or for painting and decorating. The terms of the statute must be observed in good faith; separate contracts cannot be let with the purpose of each falling below the amount required for competitive bidding.

The decision of the lower court that the statute applies to the construction of the building in question is in harmony with the conclusion stated, but the judgment should not have confined the defendant board to the letting of a single contract for construction.

The judgment is reversed, and the cause remanded for further proceedings in harmony with this opinion.

All the Judges concur.