CENTER DRAINAGE DISTRICT NO. 1, Plaintiff and Appellant, v. CAPITOL INDEMNITY CORPORATION, Defendant and Respondent: CACIC, Impleaded Defendant.

*November 30, 1966—January 3, 1967.*

For the appellant there were briefs by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs.*

For the respondent there was a brief by *Arthur, Tomlinson & Gillman* and *Thomas W. Bertz,* all of Madison, and oral argument by *Mr. Bertz.*

WILKIE, J. The sole issue presented by this appeal is: Did the failure of the district to finish the work by asking for bids under sec. 89.48, Stats., excuse the bonding company and the contractor from all liability resulting from breach of contract and abandonment of the work?

Sec. 89.48, Stats., provides as follows:

"(1) In all cases where the work to be done at any time under the direction of the commissioners shall in their opinion cost to exceed two thousand dollars unless the court has authorized the district itself to do the work the commissioners shall advertise for bids on such work in some newspaper published in the county in which the petition is filed . . . .

"(2) Such work shall be let to the lowest responsible bidder . . . ." [1]

The trial judge found that the district had not complied with this statute in reletting the remaining work under the original contract with Cacic. It also found that this failure excused the liability of the contractor and

---

[1] Sec. 89.48 (1) and (2), Stats., has become embodied in sec. 88.62 (1). This change was made by ch. 252, sec. 158, Laws of 1965.

the surety although all other findings made by the trial judge indicated that liability should have been imposed.

The basic purpose of the statute is not to protect sureties. Rather, it is to protect the public from paying what may be uncompetitive prices for public work.

Capitol seeks to avoid all liability by failure of the district to comply with the bidding statute. Thus, it seeks to void its obligation under the first contract by illegal procedure alleged to void the second. The general rule is that

". . . where the contract in question is ultra vires merely in the secondary sense of the term, namely, not expressly prohibited to it, but beyond the scope of the general powers conferred upon it, or, at least, while within the general powers of the municipality, is not entered into in strict compliance with the conditions prescribed by the charter or statute for its validity, the other party to the contract who has received its benefits cannot defeat its enforcement by the municipality by pleading the defense of ultra vires." [2]

The rationale behind this rule is that the defense of *ultra vires* in the secondary sense is created for the benefit of the municipality which has suffered an injury by reason of such unauthorized contract in order to protect the taxpayers and the municipality from the effects of such a contract. Only the municipality or taxpayers representing the municipality may, therefore, invoke the defense. Thus, in *Madison v. American Sanitary Engineering Co.*[3] this court rejected an attempt by the contractor to void his contract because the city failed to comply with a requirement of competitive bidding. This court said that this contention is available only to taxpayers or landowners, and once a surety has entered into a contract, the surety cannot challenge the contract because it was not made in the required manner.

---

[2] Anno. 122 A. L. R. 1370, 1372. See also 38 Am. Jur., Municipal Corporations, p. 181, sec. 505.

[3] (1903), 118 Wis. 480, 95 N. W. 1097.

In *Baumann v. West Allis* [4] a claim of illegality as to a contract was rejected, the court stating:

"Those cases lay down the principle that contracts binding a municipality can be culminated only in the manner prescribed by the charter, and municipal officers must follow the prescribed procedure step by step. This doctrine has been applied, however, only for the protection of taxpayers whose money is about to be spent, or property owners whose land is about to be charged, by reason of the illegal contract. It is just as clearly established by the decisions of this court that persons who enter into a contract with the city stand in a different position. Such persons 'cannot even make the defense of *ultra vires* or total lack of power on the part of the corporation to make the contract. If the defense of *ultra vires* cannot be made, it is very evident that the lesser claim . . . must also be ineffective.' *Ricketson v. Milwaukee,* 105 Wis. 591, 81 N. W. 864. See, also, *Beloit v. Heineman,* 128 Wis. 398, 107 N. W. 334; *Price Co. v. Northwestern C. & S. Co.,* 184 Wis. 279, 199 N. W. 60. *The limitations upon the authority of municipal officers to enter into contracts, and prescribed methods for the exercise of such power, are for the protection of the public, and such provisions will not be permitted to be invoked to the harm of the public by those who, having capacity to contract for themselves, have in form entered into contractual relations with a municipality. In other words, a law intended as a shield for the public will not be permitted to be used as an instrument for its destruction."* (Emphasis added.) [5]

Since neither the surety nor the contractor could make such a contention as to the original contract, there should be no reason why they should have the authority to challenge the reletting contract on this basis. This is particularly true in view of the fact that the purpose of the statute is to protect the taxpayers. Application of the statute to protect the surety in the case at bar would only hurt the taxpayers because the surety escapes liability.

[4] (1925), 187 Wis. 506, 204 N. W. 907.

[5] Id. at page 521.

Respondent cites several cases for the proposition that failure of the drainage district to comply with the competitive bidding statutes in reletting the contract work relieves the surety of liability. None of these cases sustain this proposition. The major reason is that in none of the cases is the surety or contractor arguing the wrongful reletting as a defense to all liability.[6]

The general rule is that a compensated surety is an insurer and its obligation is to be strictly construed.[7] The surety in the case at bar executed a performance bond; it had an opportunity to take over the work in an attempt to minimize its damages but refused to do so, letting the matter drag for some time; if the surety believes the costs incurred by improperly reletting the work are excessive, its remedy is to attempt to reduce its liability by proving excessive completion costs; it cannot be permitted to escape any liability by virtue of the district failing to follow the competitive bidding procedure when the first contract was in trouble.

*By the Court.*—Judgment reversed.

---

[6] In *Trustees of Sanitary District of Chicago v. Poe* (1921), 138 Md. 541, 114 Atl. 714, the sanitary district completed the work itself and there was no reletting. In *Wykoff v. Stewart* (1917), 180 Iowa 949, 164 N. W. 122, the contract was relet by advertisement. The work was also properly relet in *Board of Drainage Commissioners v. H. J. Peterson & Co.* (1922), 196 Ky. 130, 244 S. W. 322. Respondent completely misses the point in citing *Central Lime & Cement Co. v. Leyden-Ortseifen Co.* (1927), 245 Ill. App. 48. In this case the district breached the contract by a wrongful termination. The court held that any reletting of the work was also wrongful and the cost of this reletting could not be charged against money owed to the contractor. In conclusion, in none of these cases was the surety using wrongful reletting as an absolute defense to liability under the original contract.

[7] 72 C. J. S., Principal and Surety, p. 583, sec. 102; 94 A. L. R. 876.