BOARD OF COUNTY COMMISSIONERS — COMPETITIVE BIDDING To comply with 69 O.S. 636 [69-636](c) (1971) a board of county commissioners must go out for bid on culvert pipe each time that the purchase is $1,500 or more. The purchase period for each such purchase is terminated upon approval by the purchasing officer and certification by the officer charged with keeping the appropriation and expenditure records. A board of county commissioners cannot lawfully make an indefinite number of purchases of culvert pipe which are each less than $1,500 with the intent to circumvent the competitive bidding required by 69 O.S. 636 [69-636](c) (1971). The Attorney General has received your letter wherein you ask the following questions: 1. With what frequency must a board of county commissioners go out for bid on culvert pipe in order to comply with 69 O.S. 636 [69-636](c) (1971)? 2. What is the definition of "purchase period"? 3. Can a board of county commissioners make an indefinite number of culvert pipe purchases so long as no single purchase order exceeds $1,500? Your questions involve an interpretation of 69 O.S. 636 [69-636](c) (1971), which provides as follows: "The respective Boards of County Commissioners shall purchase all highway construction and maintenance equipment and machinery, corrugated metal or concrete pipe culverts from the lists so provided, and may purchase any item thereof contained on a list at a price not greater than the price filed with them and set forth on the respective lists approved and adopted by them. However, all purchases in excess of One Thousand Five Hundred Dollars ($1,500.00) made under the provisions of this Section shall be made upon sealed bids and from the lowest and best bidder. Nothing contained in this Section shall be construed to prohibit any rental purchase agreement authorized by law." (Emphasis added) In an opinion dated December 15, 1955, and addressed to Scott Burson, State Examiner and Inspector, the Attorney General stated, in pertinent part that: ". . . any purchase of corrugated metal or concrete pipe culvert made by the board of county commissioners must be made from lists as required . . . and that if the amount of such purchase, including cost of freight and transportation, but excluding the cost of laying same in place, is in excess of $1,500 then such purchase should be made on competitive bids from said lists, as required. . . ." The Attorney General in 1 Okl. Op.A.G. 227, stated: "The Board of County Commissioners can purchase material from any of the bidders submitting bids, provided such bidder will furnish material on said list at a price not greater than the lowest price filed with them and set forth on the respective lists approved and adopted by them on purchases of material of $1,500 or less. Purchases of material in excess of $1,500 must be made upon sealed bids and from the lowest and best bidder and such purchases may not be split to avoid competitive bidding." It is well settled in Oklahoma that boards of county commissioners are to advertise for bids on culvert pipe when the amount involved is $1,500 or more and that such purchases are to be made by sealed bids from the lowest and best bidder. Hisel v. State, Okl., 264 P.2d 375 (1953). In McVicker v. Board of County Commissioners of the County of Caddo, Okl., 442 P.2d 297 (1968) the Court stated that: "If the wording of a provision of a statute is plain, clear and unambiguous, its evident meaning must be accepted and there is no reason or justification for the use of interpretative devices to fabricate a different meaning." The plain, clear and unambiguous meaning of 69 O.S. 636 [69-636](c) (1971) is that all purchases of culvert pipe in excess of $1,500 are to be made by sealed bids and from the lowest and best bidder. Compliance with this statute would necessitate advertising for bids for culvert pipe at any time the purchase price exceeds $1,500. With regard to your second inquiry regarding the definition of a purchase period, neither the Commercial Code, 12A O.S. 1-201 [12A-1-201] (1971), nor the Purchase Order Statute, 62 O.S. 310.1 [62-310.1] (1971) defines a specific period of time as being a purchase period. Title 12A O.S. 1-201 [12A-1-201](32) (1971) defines purchase as "taking by sale, discount, negotiation, mortgage, pledge, lien, issue, or re-issue, gift or any other voluntary transaction creating an interest in property." Black's Law Dictionary defines purchase as the "Transmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration." In First National Bank Trust Company of Chickasha v. United States, Okl., 462 F.2d 908, 910, the Court stated that " 'Purchase' can mean to own by paying an agreed price which is enforceable at law." Title 62 O.S. 310.1 [62-310.1] (1971) states in pertinent part: ". . . Boards of County Commissioners . . . shall submit all purchase orders and contracts . . . to the officer charged with keeping the appropriation and expenditure records of the county. . . . ". . . Provided no purchase order to contract shall be valid unless signed and approved by the purchasing officer and certified . . . by the officer charged with keeping the appropriation and expenditure records. . . ." From the foregoing authorities and statutes cited, it would appear that the purchase period for each purchase is terminated upon approval by the purchasing officer and certification by the officer charged with keeping the appropriation and expenditure records. With regard to your third question of whether a board of county commissioners may make an indefinite number of culvert pipe purchases so long as no single purchase order exceeds $1,500, 64 Am.Jur.2d, Public Works and Contracts, 42 at page 895 states that: "Competitive bidding statutes are by their terms usually only applicable to contracts exceeding a certain stipulated amount. In determining whether a particular contract is sufficiently large to come within the amount specified in a statute as requiring competitive bids, a question frequently arises as to whether the work involved must be regarded as included in one contract, or whether it may be split up into several smaller contracts, each of which will be under the minimum requirement of the statute. When it is apparent that the work has been split up for the purpose of evading the statute, the courts have generally held the contracts to be invalid. On the other hand, if the public officials responsible for letting the contract appear to have acted in good faith, multiple contracts may be upheld even though the total involved in them in the aggregate is greater than the amount specified in the statute. "Some courts have held that the statutory limitation invalidates a contract made for the furnishing of materials at a specified price per unit without any definite agreement as to the number of units to be supplied, if the total amount actually furnished exceeds the limit, and if the purchasing officials could reasonably have anticipated that the amount would be large enough to do so. In other cases the decision whether such a contract is valid or invalid appears to be based upon the right of the contracting public officers to stop the furnishing of material under the contract before the statutory limitation has been reached. If the right exists, the contract may be upheld, even though such right is not exercised and materials are furnished under the contract in excess of the statutory limit. So, in a number of cases, even though the total amount involved in the contracts was in excess of the statutory limit for contracts entered into without competitive bids, the court upheld the validity of the contracts where no intent to evade the law was found. . . . " (Emphasis added) Although Oklahoma has a statutory prohibition against the splitting of claims with regard to culverts and bridges, 19 O.S. 410.9 [19-410.9] (1971) (Bid splitting), said statute refers only to 69 O.S. 633 [69-633] (1971) and does not refer to 69 O.S. 636 [69-636](c) (1971) with regard to culvert pipes. Title 62 O.S. 303 [62-303] (1971) imposes criminal and civil liability upon public officers with regard to their misconduct relating to claims and contracts not specifically authorized by law. Said statute provides that: "Any member of the board of county commissioners, township board, city council, board of trustees of incorporated town, knowingly, wilfully and intentionally allowing any claims or entering into any contract on the part of such county, township, city or incorporated town, not specifically authorized by law, shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the penitentiary for a term not to exceed five years, and the official bond of said officer shall in any event be liable for the amount or amounts of money so unlawfully expended or misappropriated." (Emphasis added) A similar prohibition is found in 62 O.S. 372 [62-372] (1971), with regard to fraudulent claims, which provides that: "Every officer of the State and of any county, township, city, town, or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the State or to such county, township, city, towns or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or . agreement made or attempted to be made, for the State or any such county, township, city, town, or school district, by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the State, county, township, city, town, or school district affected, for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the State or such county, township, city, town, or school district, or of any resident taxpayer thereof, as hereinafter provided." (Emphasis added) Multiple purchases of culvert pipe, each for less than $1,500, made in order to evade the requirements of 69 O.S. 636 [69-636](c) (1971) would clearly be a fraudulent claim under 62 O.S. 372 [62-372] (1971) and would constitute misconduct on the part of the board of county commissioners making such claims, under 62 O.S. 303 [62-303] (1971). However, several purchases of culvert pipe, each for less than $1,500, made with no intent to evade the requirements of the competitive bidding statute but rather for unexpected, unanticipated, or emergency needs would not fall within the purview of 62 O.S. 372 [62-372] (1971) or 62 O.S. 303 [62-303] (1971), because said purchases would not be unauthorized, unlawful or fraudulent. In Tobin v. Sundance, Wyo., 17 P.2d 666
(1933), the Court discussed the splitting of claims under the circumstances of being emergency procedures involving the health and safety of the citizens and held that, under the facts of that case, the parties did not split the original contract in order to evade the competitive bidding statute. The Court then discussed People v. Lamon, Ill., 83 N.E. 1070, as follows: "In People v. Lamon, 232 Ill. 587, 83 N.E. 1070, 1071, the statute required municipalities to let sidewalk contracts upon advertisement to the lowest responsible bidder where the expense exceeded $500. Sidewalks were laid along a street, but this law was disregarded. Four separate contracts were made between the authorities and the contractor, each for less than $500 expense. Disallowing the contention that it was unnecessary to advertise for bids, the court said: 'The contracts are identical in every respect, except that each concerns the construction of a sidewalk in front of a different lot. The four contracts, when read together, constitute a contract to construct 258.06 lineal feet of sidewalk, 14 feet wide, in front of the four lots belonging to appellants, at 14% cents per square foot. No reason is suggested and no explanation is attempted by appellee for splitting up this improvement into four separate contracts. The reason for the course pursued is apparent. It is manifestly a mere shift for the purpose of evading section 7 of the sidewalk statute. If the method pursued by the city is sustained, section 7 of this statute will be rendered nugatory. If the sidewalk in front of each lot is to be regarded as a separate and distinct improvement, it would probably never happen that the cost of constructing a sidewalk in front of a single lot would exceed $500. Under appellee's contention, a sidewalk extending the entire length of a street may be constructed at a cost of many thousand dollars and a private contract entered into for the entire work. The only thing necessary to evade the statute is to execute a duplicate contract for that portion of the walk in front of each lot.' " In State, ex rel Collins v. Halladay,62 S.D. 256, 252 N.W. 733 (1934), the Court stated: ". . . separate contracts might be let for excavation, for heating and plumbing installation, for electric wiring, or for painting and decorating. The terms of the statute must be observed in good faith; separate contracts cannot be let with the purpose of each falling below the amount required for competitive bidding." In State v. Kollarik, N.J., 126 A.2d 875 (1956), the New Jersey statute specified for competitive bidding on contracts in excess of $1,000. Through five vouchers, payment of $4,000 was made to a firm for cleanup work after a hurricane. The Court held that this practice was an attempt to evade the competitive bidding statute. In Fonder v. City of South Sioux Falls, S. D., 71 N.W.2d 618, 53 A.L.R.2d 493 (1955), the city made agreements for gravel without compliance with competitive bidding statute; the city had a continuous need for gravel supply for maintaining the streets; each of the 74 transactions was less than the amount specified for the requirements of competitive bidding, but the total cost was greatly in excess of such amount. The Court stated that: "The intention to regulate the purchase of all materials, supplies and equipment by public corporations is made manifest by the express terms of this statute. For obvious reasons small contracts were excepted from its provisions. However, by introducing this exception dealing with small contracts, it is inconceivable that the lawmakers intended to provide a lawful means by which its prime objective to require that the major needs of the public for materials, supplies or equipment be met through competitive lettings could be circumvented by multiple small open-market purchases. For that reason we are firmly persuaded that given a present need for gravel costing several thousand dollars for immediate application to its streets in the maintenance and repair thereof, a city would violate the provisions of this statute if it sought to meet that need, without competitive bids, through multiple contemporaneous orders or contracts, each involving less than $500. McQuillan, Municipal Corporations, 3d Ed, 29.33. By parity of reasoning we are also convinced that given a recognized current need for such a supply of gravel for application over a period of weeks or months, a city would violate this statute, if, without competitive bidding, it attempted to meet that apparent need through multiple noncontemporaneous contracts. To arrive at a different conclusion, we would be compelled to ignore the object and spirit of this legislation." (Emphasis added) It would also appear that there is a recognized current need for a certain amount of culvert pipe over a certain period, and that if the board of county commissioners made multiple noncontemporaneous contracts without competitive bidding in an attempt to meet that need, the board would be in violation of 69 O.S. 636 [69-636](c) (1971). Oklahoma Courts have consistently held that splitting a contract into several parts with the intent to render competitive bidding unnecessary is clearly prohibited. Fire Extinguisher Manufacturing Co. v. Perry, Okl., 58 P. 635 (1899) United States Rubber Co. v. Tulsa, Okl., 229 P. 771 (1924), Hisel v. State, Okl., 264 P.2d 375 (1953). In Fire Extinguisher Manufacturing Co. v. Perry supra, a statute limited the ability of the city council to contract for fire equipment. No one purchase was to exceed $500 unless it was authorized by the majority vote of the electors of the city. The syllabus indicated that: "Where a city council purchases fire apparatus at one purchase, and agrees to pay the sum of $1,100 therefor, no election having been held to authorize such purchase, the contract is void, and the city council cannot validate such illegal contract by splitting the sum into three parts of less than $500 each, and executing warrants therefor, and the payment of warrants so executed may be defeated by the city." In United States Rubber Co. v. City of Tulsa, supra, the City of Tulsa purchased 200 feet of cotton rubber lined hose at seven times during the month of December, each purchase being $420, therefore less than the $500 amount specified in the statute requiring competitive bidding. The Court held that the contract was illegal and void. Further, in Hisel v. State, supra, the syllabus noted that: "Where county commissioners by statute are prohibited by law from making single purchase in excess of stated amount without advertisement for bids, the statute may not be circumvented by the splitting of claims so that the amount of each claim will be less than the statutory limit which may be purchased without advertisement." It would therefore appear that the intent and factual circumstances surrounding the purchase of culvert pipe would be determinative. If the county commissioners made multiple purchases of culvert pipe with the intent to evade the competitive bidding statute, either from one seller or from several sellers, then such purchases would be unlawful, unauthorized, and fraudulent under 62 O.S. 372 [62-372] (1971). A continuing course of conduct, such as was present in the factual circumstances of United States Rubber Co. v. City of Tulsa, supra. Fonder v. City of South Sioux Falls, supra, and People v. Lamon, supra, may well be viewed by the courts as such an attempt to evade competitive bidding. Condoning such a course of conduct would clearly violate the legislative intent in the enactment of such a statute. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: To comply with 69 O.S. 636 [69-636](c) (1971) a board of county commissioners must go out for bid on culvert pipe each time that the purchase is $1,500 or more. The purchase period for each such purchase is terminated upon approval by the purchasing officer and certification by the officer charged with keeping the appropriation and expenditure records. Further, it is the opinion of the Attorney General that a board of county commissioners cannot lawfully make an indefinite number of purchases of culvert pipe which are each less than $1,500 with the intent to circumvent the competitive bidding required by 69 O.S. 636 [69-636](c) (1971). (Marvin C. Emerson)